UNITED STATES DISTRICT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION | Case No.  1:23-cv-01112 |
| Plaintiff, | Hon. Robert J. Jonker |
| v | Magistrate Judge Sally J. Berens |
| JOHN W. HIGGINS, MARTHA R. HIGGINS; and UNITED STATES OF AMERICA, | |
| Defendants. | **PLAINTIFF JPMORGAN CHASE BANK, N.A.'S SECOND AMENDED COMPLAINT** |
| UNITED STATES OF AMERICA, | |
| Counterclaim/Crossclaim Plaintiff, | |
| v | |
| JOHN W. HIGGINS, MARTHA R. HIGGINS; | |
| Crossclaim Defendants, | |
| and | |
| JPMORGAN CHASE BANK, N.A, | |
| Counterclaim Defendant. | |

_____

| | |
|---|---|
| Mark J. Magyar (P75090) | John Higgins, pro se |
| DYKEMA GOSSETT PLLC | Martha Higgins, pro se |
| Attorneys for Plaintiff | 50102 Alpine Blvd. |
| 201 Townsend St., Suite 900 | Grand Beach, MI 49117 |
| Lansing, MI 49301 | (312) 560-9620 |
| Telephone:  (616) 776-7500 | jhiggins@higginsdevelopment.com |
| mmagyar@dykema.com | |
| | Sarah Stoner |
| | Trial Attorney, Tax Division |
| | U.S. Department of Justice |
| | P.O. Box 55 |
| | Washington, D.C. 20044 |
| | T: (202) 514-1170 / F: (202) 514-5238 |
| | Sarah.Stoner@usdoj.gov |
| | Counsel for United States |

_____

## SECOND AMENDED COMPLAINT
_____

JPMorgan Chase Bank, National Association (hereinafter referred to as "Plaintiff" or "Chase"), by and through its attorneys, Dykema Gossett PLLC, submits the following as its Second Amended Complaint pursuant to the Case Management Order entered in this case on January 31, 2024. (RE 29, PageID. 149.)

### The Property

1. Plaintiff claims an interest in real property located in the County of Berrien, State of Michigan, which is the subject matter of this Complaint (hereinafter referred to as the "Property").

2. The Property is situated in the Township of New Buffalo, County of Berrien, State of Michigan, and is particularly described as:

> **Lot 18, Alpine Valley, being a subdivision in part of the fractional Northwest quarter of fractional Section 17, and the fractional East half of Section 18, Township 8 South, Range 21 West, Village of Grand Beach, Berrien County, Michigan, according to the Plat thereof recorded June 4, 1979 in Book 23 of Plats, Page 27**
>
> **AND**
>
> **Lot 203, New Park Addition to Grand Beach Springs, Sections 17 and 19, Township 8 South, Range 21 West, Village of Grand Breach, Berrien County, Michigan, according to the Plat thereof recorded March 120, 1923 in Book 6 of Plats, Page 48.**

**Taxed together as Tax ID: 39-0500-0018-01-04**

**Commonly known as: 50102 Alpine Blvd., New Buffalo MI 49117**

### Parties

3. Plaintiff JPMorgan Chase Bank, N.A. has a secured mortgage interest in Lot 18 and should have an interest in Lot 203 with priority over all others claiming an interest in the Property.

2

4. Defendants John W. Higgins and Martha R. Higgins reside at the Property and have a recorded title interest in the Property.

5. Defendant United States of America has a recorded Tax Lien interest in the Property.

### Jurisdiction and Venue

6. Jurisdiction and Venue are proper pursuant to the United States's removal of this matter from the Berrien County Circuit Court under 28 U.S.C. §§ 1441, 1442, and/or 1444.

### General Allegations

7. Two lots are at issue, Lots 18 and 203, which share a common address (50102 Alpine Road, New Buffalo, Michigan 49117) and parcel tax identification number: 11-39-0500-0018-01-4.

8. A 2019 survey (attached as **Exhibit 1**) shows the layout of these lots as follows:



9. Besides Lots 18 and 203 at issue, Defendants John and Martha Higgins previously owned Lot 20 as well, but Berrien County acquired that lot in a tax foreclosure.

10. Defendants John and Martha Higgins purchased Lot 18 in 1984. Until 2005, the structure of the home in which Defendants reside was located solely on Lot 18.

11. The Higginses purchased Lot 203 in 2002. By itself, Lot 203 is unbuildable.

12. In or around 2003 or 2004, John and Martha Higgins applied for and were approved for the combination of Lots 18 and 203 into a single Parcel for identification purposes, PIN # 11-39-0500-0018-01-4.

13. On March 16, 2005, the Higginses obtained a $999,999 loan from Chase, as evidenced by the promissory note and mortgage they signed. (**Exhibits 2 and 3**, Note and Mortgage.)

14. Under the Mortgage, the loan is secured by the Property. The legal description refers only to Lot 18, whereas the remainder of the description of the collateral references that "[t]he Real Property or its address is commonly known as 50102 Alpine Road, New Buffalo, MI 49117" and "[t]he Real Property tax identification number is 11-39-0500-0018-01-4," which includes Lot 203.

15. On the same day they entered the Mortgage (March 16, 2005), the Higginses also entered into a "Future Advance Mortgage" with Chase in the amount of $58,500. (**Exhibit 4**.) The Future Advance Mortgage contains the same description of the Property as the Mortgage, including the legal description as to only Lot 18 but the common address and PIN of Lots 18 and 203, together.

16. Defendants John and Martha Higgins entered the Future Advance Mortgage for the purpose of using the line of credit provided thereunder to contract for improvements to their home which was located solely on Lot 18.

17. Under the Future Advance Mortgage, an Event of Default includes the Higginses' "action or inaction [that] adversely affects the collateral or [Chase's] rights in the collateral." (Ex. 4, Future Advance Mortgage p 7.)

18. The Higginses contracted with Commercial Millwork and Interiors Corporation ("CMIC") from Zeeland for improvements to the home.

4

19. Although the Higginses entered their contract with CMIC in November 2004, construction did not commence until after Chase's March 16, 2005 mortgages.

20. The construction included an addition to the Higgins' home, resulting in the home extending by a small portion onto Lot 203, after always previously being located solely on Lot 18. (*See* Ex. 1, 2019 Survey.)

21. In January 2007, CMIC sued the Higginses under the Michigan Construction Lien Act ("CLA") in the Berrien County Circuit for the remaining balance of $23,724 for the construction project. CMIC's lawsuit also named Chase due Chase's mortgage interest in the property. The Higginses and CMIC resolved the case and filed a stipulated dismissal, which the Berrien County Circuit Court entered on June 14, 2007.

22. The Higginses defaulted on their Mortgage. When Chase, by prior counsel, filed this foreclosure action in the Berrien County Circuit Court in January 2020, there remained an outstanding principal balance of $782,129.02, plus interest, late charges, advances and other fees and costs as are allowable under the provisions of the Mortgage, which have continued to grow. When Chase filed this action in 2020, in recorded a Notice of Lis Pendens as to Lots 18 and 203. (**Exhibit 5**.) The case then experienced an extended delay due to the COVID-19 pandemic.

23. After Chase filed this case and recorded the Notice of Lis Pendens in 2020, the United State of America ("United States") recorded a Federal Tax Lien on the Property, Lots 18 and 203, on May 24, 2021 for Tax Periods 2008, 2009, 2010, 2011 and 2016 against Defendants John and Martha Higgins. (**Exhibit 6**.)

24. The United States's counterclaim in this case sets forth that the Higgins's tax liens: "have balances due as of October 25, 2023, including assessed and accrued late payment penalties under 26 U.S.C. § 6651, and penalties for failure to make estimated tax payments under 26 U.S.C. §

6654, costs, and statutory interests, and after applying any abatements, payments, and credits through October 25, 2023, as follows:

| Tax Period Ending | Assessment Date | Tax Amount Assessed | Balance Due 10/25/2023 |
|---|---|---|---|
| 12/31/2011 | 12/10/2012 | $ 248,553.32 | $ 470,588.35 |
| 12/31/2016 | 11/27/2017 | $ 236,445.00 | $ 389,921.87 |
| 12/31/2021 | 11/21/2022 | $  24,535.00 | $  28,628.84 |
| **Total Balance** | | | **$ 889,139.06**" |

25. On July 9, 2021, September 23, 2021, and October 26, 2021, Chase provided letters to the Higginses informing them that their COVID-19 payment assistance would be ending soon, on October 31, 2021.

26. On May 18, 2022, Chase sent a letter to the Higginses advising them that they had been approved for a loan modification. As part of the modification, Chase advised the Higginses in the May 18, 2022 letter that Chase would adjust the unpaid principal balance of the Higginses' loan as follows:

| | |
|---|---|
| Current unpaid principal balance | $777,942.98 |
| Interest | $233,664.33 |
| Escrow advance | $139,426.86 |
| Recoverable costs | $855.62 |
| Less funds held in suspense | $(7,608.10) |
| Adjusted unpaid principal balance | $1,144,281.69 |

27. Effective July 1, 2022, Chase and the Higginses entered into a Loan Modification Agreement. (**Exhibit 7**.) The parties agreed that the "New Principal Balance" was $1,144,281, which, pursuant to paragraph 2(B) of the Loan Modification Agreement (and as stated in Chase's May 18, 2022 letter set forth above), included all unpaid amounts and arrearages (excluding unpaid late charges), any outstanding amounts the payment of which may have been previously deferred under

6

any prior agreement, including any deferred principal balances or other deferred balances and may include amounts toward taxes, insurance, or other assessments.

28. In paragraphs 3C and 3D of the Loan Modification Agreement, John and Martha Higgins agreed that their Note and Mortgages with Chase are "valid, binding agreements, enforceable in accordance with their terms," and that all terms and provisions of the Note and Mortgages, "except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect," and "nothing in this [Loan Modification] Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the" Note or Mortgages.

29. Defendants John and Martha Higgins defaulted on the Loan Modification Agreement.

30. As of February 15, 2024, the pay off quote for the Higginses' loan is $1,286,425.01, good through March 14, 2024.

## COUNT I - JUDICIAL FORECLOSURE

31. Plaintiff restates all preceding Paragraphs, as if fully set forth herein.

32. Plaintiff's Mortgage and Note have not been satisfied.

33. Defendants John W. Higgins and Martha R. Higgins have defaulted under the terms of Plaintiff's Mortgages and Note and the Loan Modification Agreement by, among other ways, failing to make monthly payments as required, failing to pay property taxes that have therefore been advanced by Chase, and adversely affecting Chase's rights in the collateral by making Lot 18 unmarketable when the Higgins constructed the improvements causing the home to extend onto Lot 203.

34. The interest in the Property held by Defendants John W. Higgins and Martha R. Higgins is subject to foreclosure of Chase's Mortgage, at least with respect to Lot 18, on which there is no dispute by any party that Chase holds a valid mortgage that is superior to all other claims of interest.

35. Pursuant to MCL 600.3101 et seq. Chase is entitled to a judgment of foreclosure in the amount of the outstanding principal balance, late charges, advances and any and all fees, costs and/or expenses incurred by Chase that are recoverable pursuant to the provisions of its mortgage, including accrued interest at the contract rate and attorney fees and costs.

36. No other action has been brought to recover all or part of the debt secured by Chase's Mortgage.

37. Plaintiff has exercised its right to accelerate the debt.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Enter a Judgment in favor of Plaintiff against Defendants John W. Higgins and Martha R. Higgins for foreclosure of its mortgage, at least as to Lot 18, and sale of the Property to satisfy the debt due and owing, including all amounts recoverable under the provisions of its mortgage;

B. Bar Defendants and all other persons claiming to or under Defendants John and Martha Higgins, from all rights and equity of redemption to the premises after six (6) months from the date of the sale;

C. Provide that the proceeds from said foreclosure sale be used to satisfy the outstanding debt due and owing to Chase and if the proceeds of said sale are insufficient to satisfy the outstanding debt, then Chase shall entitled to a judgment against Defendants John W. Higgins and Martha R. Higgins for any deficiency; and,

D. Whatever further relief this Court deems equitable and appropriate.

## COUNT II - DETERMINE INTERESTS IN LAND

38. Chase restates all preceding Paragraphs, as if fully set forth herein.

39. Chase's Mortgages refer to encumbering only Lot 18, as above described, but the common address description and PIN each encompass both Lots 18 and 203. At the time of the

8

Mortgage, the Higgins's home was confined to Lot 18 and therefore fully marketable, whereas Lot 203 was not independently buildable and worth substantially less than Lot 18 if viewed individually.

40. When the Higginses used loan proceeds they received from Chase to pay for contracted construction improvements to the Property, they caused their dwelling to extend beyond Lot 18, onto Lot 203. In preparing to do so, they applied for and obtained approval before construction, in or around 2003 or 2004, to combine Lots 18 and 203 to be taxed together under a single Parcel ID 39-0500-0018-01-04.

41. The tax assessor's office for the Township of Buffalo, Berrien County, has confirmed that the Tax Parcel ID above-referenced has included both Lot 18 and Lot 203 since 2003 or 2004, in any event well before Chase's Mortgage was originated.

42. The Defendants John and Martha Higgins were (and are) in title to Lot 18 and Lot 203 before Chase's Mortgage originated, but the permanent structure as originally built was placed only on Lot 18 when the Higgins' obtained their loan from Chase in 2005, as the construction of the improvement did not occur until after Chase's loan to the Higginses.

43. The Higginses knew when they entered the loan with Chase that they planned to construct improvements to the home that would cause it to extend onto Lot 203. It is Chase's honest and reasonable belief that the parties to the Mortgage transaction mutually intended to for Chase's Mortgage to encumber the Property that included the home that would be marketable for sale in the event Chase undertook its foreclosure remedies, which now necessarily includes both Lot 18 and Lot 203, as a result of the improvements constructed by John and Martha Higgins. There would be no rational or logical basis to extend a $1 million dollar loan that was secured by the Property if the Property did not include the entire home and was not marketable for sale without Lot 203, which was not the intention of the parties.

44. The fact that Tax Parcel ID 39-0500-0018-01-04 includes both Lot 18 and Lot 203 and the common address for the property includes Lots 18 and 203 is further evidence of both the parties' intent and that the Mortgage should be read to include both lots.

45. As things presently stand, Chase may not have a first lien marketable title interest in and to the Property, and may not unless the legal description of Plaintiff's Mortgage is reformed as requested to include Lot 203 or this Court declares that the existing description in the Mortgages is sufficient to encompass Lot 203. Chase could foreclose on only Lot 18 pending this determination (*see* Count I), but would not be able to sell Property without Lot 203 and until there is a determination by this Court.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Enter a Judgment reforming Plaintiff's Mortgage legal description to include both Lot 18 and Lot 203 as above described or declaring that the Mortgages, as written, sufficiently describe and encompass both Lots 18 and 203;

B. Enter a Judgment holding that Plaintiff's Mortgage interest as to both lots constitutes a perfected first lien mortgage interest as to both lots dating from origination and recording of Plaintiff's Mortgage;

C. Grant such further relief as may be appropriate or equitable;

D. Allow such Judgment to be recorded to provide record evidence of the ruling of this Court.

## COUNT III – DECLARATORY JUDGMENT – ORDER OF PRIORITY OF INTERESTS IN PROPERTY

46. There exists a Federal Tax Lien on the Property which the United States recorded on May 24, 2021. (Ex. 6.)

47. Prior to the United States's recordation of its Tax Lien, on February 3, 2020, Chase recorded a Notice of Lis Pendens as to the Property in connection with this lawsuit. (Ex. 5.) The Notice of Lis Pendens specifically references this lawsuit by case number (of the Berrien County action prior to removal) and puts the world on notice, including the federal government, of this dispute in which Plaintiff asserts a superior and earlier-recorded interest in the Property.

48. MCL 600.2701(1) provides for the filing of a notice of lis pendens in order "[t]o render the filing of a complaint constructive notice to a purchaser of any real estate . . . ." "'Generally, a lis pendens is designed to warn persons who deal with property while it is in litigation that they are charged with notice of the rights of their vendor's antagonist and take subject to the judgment rendered in the litigation.'" *Richards v Tibaldi*, 272 Mich App 522, 536; 726 NW2d 770 (2006), quoting *Backowski v Solecki*, 112 Mich App 401, 412; 316 NW2d 434 (1982). "A purchaser who acquires property after the commencement of a suit and the filing of a notice of lis pendens is bound by the proceedings because '[o]ne may not purchase any portion of the subject matter of litigation and thereby defeat the object of suit.'" *Richards*, 272 Mich App at 536, quoting *Provident Mut Life Ins Co v Vinton Co*, 282 Mich 84, 87; 275 NW 776 (1937).

49. Thus, there is an actual controversy between Plaintiff and the United States under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*, to the extent they each claim liens on the Property and dispute the order of priority.

50. Therefore, a declaratory judgment is necessary for the purpose of settling and affording relief from uncertainty with respect to the rights, status, and future legal relations between Chase and the United States.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Enter a Declaratory Judgment for Chase that its interest in the Property, including as to both Lot 18 and Lot 203, is superior to the United States's interest in the Property;

11

B. Grant such further relief as may be appropriate or equitable.

C. Allow such Judgment to be recorded to provide record evidence of the ruling of this Court.

Dated: February 15, 2024

Respectfully Submitted,

  /s/ *Mark J. Magyar*
By: Mark J. Magyar (P75090)
DYKEMA GOSSETT PLLC
Attorneys for Plaintiff JPMorgan Chase Bank, N.A.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933