UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | ) ) ) | Case No. 1:23-cv-01112 |
| Plaintiff, | ) ) | Hon. District Judge Robert J. Jonker |
| v. | ) ) | Magistrate Judge Sally J. Berens |
| JOHN W. HIGGINS, MARTHA R. HIGGINS; and the UNITED STATES OF AMERICA, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Counterclaim/Crossclaim Plaintiff, | ) ) | |
| v. | ) ) | |
| JOHN W. HIGGINS and MARTHA R. HIGGINS, | ) ) ) | |
| Crossclaim Defendants, | ) ) | |
| And | ) ) | |
| JPMORGAN CHASE BANK, N.A., | ) ) | |
| Counterclaim Defendant. | ) ) | |

**DEFENDANT UNITED STATES OF AMERICA'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT WITH CROSSCLAIM AND COUNTERCLAIM**

The defendant United States of America hereby responds to the second amended

complaint filed by JPMorgan Chase Bank, National Association ("Plaintiff") as follows (any

statement not expressly admitted is denied to preserve the United States' rights):

***The Property***

1.      *Plaintiff claims an interest in real property located in the County of Berrien, State of*

*Michigan, which is the subject matter of this Complaint (hereinafter referred to as the*
*"Property").*

**RESPONSE:** Admits.

*2.      The Property is situated in the Township of New Buffalo, County of Berrien, State of*
*Michigan, and is particularly described as:*

> *Lot 18, Alpine Valley, being a subdivision in part of the fractional Northwest*
> *quarter of fractional Section 17, and the fractional East half of Section 18,*
> *Township 8 South, Range 21 West, Village of Grand Beach, Berrien County,*
> *Michigan, according to the Plat thereof recorded June 4, 1979 in Book 23 of*
> *Plats, Page 27*
>
> *AND*
>
> *Lot 203, New Park Addition to Grand Beach Springs, Sections 17 and 19,*
> *Township 8 South, Range 21 West, Village of Grand Breach, Berrien County,*
> *Michigan, according to the Plat thereof recorded March 120, 1923 [sic] in Book 6*
> *of Plats, Page 48.*
>
> *Taxed together as Tax ID: 39-0500-0018-01-04*
>
> *Commonly known as: 50102 Alpine Blvd., New Buffalo MI 49117*

**RESPONSE:** The United States admits that this paragraph, except for the Tax ID number and
the typographical error where indicated by "[sic]" above, accurately recites the legal descriptions
for Lots 18 and 203, that these lots are located in the Township of New Buffalo, Michigan, and
that Plaintiff in this action has claimed an interest in both lots. The United States asserts that the
Tax ID should be 11-39-0500-0018-01-04 and the typographical error is that the Plat that
includes Lot 203 was recorded on March 10, 1923.

*Parties*

*3.     Plaintiff JPMorgan Chase Bank, N.A. has a secured mortgage interest in Lot 18 and should have an interest in Lot 203 with priority over all others claiming an interest in the Property.*

**RESPONSE:** Denies.

*4.     Defendants John W. Higgins and Martha R. Higgins reside at the Property and have a recorded title interest in the Property.*

**RESPONSE:** Admits.

*5.     Defendant United States of America has a recorded Tax Lien interest in the Property.*

**RESPONSE:** Admits.

*Jurisdiction and Venue*

*6.     Jurisdiction and Venue are proper pursuant to the United States's removal of this matter from the Berrien County Circuit Court under 28 U.S.C. §§ 1441, 1442, and/or 1444.*

**RESPONSE:** Admits.

*General Allegations*

*7.     Two lots are at issue, Lots 18 and 203, which share a common address (50102 Alpine Road, New Buffalo, Michigan 49117) and parcel tax identification number: 11-39-0500-0018-01-4.*

**RESPONSE:** Admits

*8.     A 2019 survey (attached as Exhibit 1) shows the layout of these lots as follows: [IMAGE OMITTED].*

**RESPONSE:** The United States Admits the image included (omitted here), and attached to the second amended complaint as Exhibit 1, appears to be a 2019 land survey of the Property and surrounding plots as described in the paragraph.

9.      *Besides Lots 18 and 203 at issue, Defendants John and Martha Higgins previously owned Lot 20 as well, but Berrien County acquired that lot in a tax foreclosure.*

**RESPONSE:** Admits.

10.      *Defendants the Higginses purchased Lot 18 in 1984. Until 2005, the structure of the home in which Defendants reside was located solely on Lot 18.*

**RESPONSE:** Admits John and Martha Higgins purchased Lot 18 in 1984, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation.

11.      *The Higginses purchased Lot 203 in 2002. By itself, Lot 203 is unbuildable.*

**RESPONSE:** The United States admits the Higginses purchased lot 203 in 2002, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation.

12.      *In or around 2003 or 2004, John and Martha Higgins applied for and were approved for the combination of Lots 18 and 203 into a single Parcel for identification purposes, PIN # 11-39-0500-0018-01-4.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

13.      *On March 16, 2005, the Higginses obtained a $999,999 loan from Chase, as evidenced by the promissory note and mortgage they signed. (Exhibits 2 and 3, Note and Mortgage.)*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation, except to admit that the copy of the promissory note and mortgage, attached as Exhibit 2 and 3, appears to be an accurate copy of those referenced in the paragraph.

14.     *Under the Mortgage, the loan is secured by the Property. The legal description refers only to Lot 18, whereas the remainder of the description of the collateral references that "[t]he Real Property or its address is commonly known as 50102 Alpine Road, New Buffalo, MI 49117" and "[t]he Real Property tax identification number is 11-39-0500-0018-01-4," which includes Lot 203.*

**RESPONSE:** The United States denies that the mortgage secures the entirety of the Property located at 50102 Alpine Road, New Buffalo, MI 49117, both Lot 18 and Lot 203, but admits the Mortgage includes the quoted language.

15.     *On the same day they entered the Mortgage (March 16, 2005), the Higginses also entered into a "Future Advance Mortgage" with Chase in the amount of $58,500. (Exhibit 4.) The Future Advance Mortgage contains the same description of the Property as the Mortgage, including the legal description as to only Lot 18 but the common address and PIN of Lots 18 and 203, together.*

**RESPONSE:** The United States denies to the extent the allegation asserts that the Future Advance Mortgage represents a secured interest in the entirety of the Property located at 50102 Alpine Road, New Buffalo, MI 49117, both Lot 18 and Lot 203, but otherwise admits.

16.     *Defendants John and Martha Higgins entered the Future Advance Mortgage for the purpose of using the line of credit provided thereunder to contract for improvements to their home which was located solely on Lot 18.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

17.     *Under the Future Advance Mortgage, an Event of Default includes the Higginses' "action or inaction [that] adversely affects the collateral or [Chase's] rights in the collateral." (Ex. 4, Future Advance Mortgage p 7.)*

**RESPONSE:** The United States admits the allegation accurately quotes the Future Advance Mortgage, Exhibit 4.

18.     *The Higginses contracted with Commercial Millwork and Interiors Corporation ("CMIC") from Zeeland for improvements to the home.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

19.     *Although the Higginses entered their contract with CMIC in November 2004, construction did not commence until after Chase's March 16, 2005 mortgages.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

20.     *The construction included an addition to the Higgins' home, resulting in the home extending by a small portion onto Lot 203, after always previously being located solely on Lot 18. (See Ex. 1, 2019 Survey.)*

**RESPONSE:** The United States admits the home extends onto Lot 203, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation.

21.     *In January 2007, CMIC sued the Higginses under the Michigan Construction Lien Act ("CLA") in the Berrien County Circuit for the remaining balance of $23,724 for the construction project. CMIC's lawsuit also named Chase due Chase's mortgage interest in the property. The Higginses and CMIC resolved the case and filed a stipulated dismissal, which the Berrien County Circuit Court entered on June 14, 2007.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

22.     *The Higginses defaulted on their Mortgage. When Chase, by prior counsel, filed this foreclosure action in the Berrien County Circuit Court in January 2020, there remained an outstanding principal balance of $782,129.02, plus interest, late charges, advances and other fees and costs as are allowable under the provisions of the Mortgage, which have continued to grow. When Chase filed this action in 2020, in [sic] recorded a Notice of Lis Pendens as to Lots 18 and 203. (Exhibit 5.) The case then experienced an extended delay due to the COVID-19 pandemic.*

**RESPONSE:** The United States admits Chase filed the foreclosure action initially in Berrien County Circuit Court in January 2020 and admits Exhibit 5 shows a Notice of Lis Pendens as described in the allegation. Otherwise, the United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

23.     *After Chase filed this case and recorded the Notice of Lis Pendens in 2020, the United State [sic] of America ("United States") recorded a Federal Tax Lien on the Property, Lots 18 and 203, on May 24, 2021 for Tax Periods 2008, 2009, 2010, 2011 and 2016 against Defendants John and Martha Higgins. (Exhibit 6.)*

**RESPONSE:** The United States admits the Federal Tax Lien described in the allegation was filed with the Berrien County Register on May 24, 2021, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation.

24.     *The United States's counterclaim in this case sets forth that the Higgins's tax liens: "have balances due as of October 25, 2023, including assessed and accrued late payment penalties under 26 U.S.C. § 6651, and penalties for failure to make estimated tax payments under 26*

7

*U.S.C. § 6654, costs, and statutory interests, and after applying any abatements, payments, and credits through October 25, 2023, as follows:*

| Tax Period Ending | Assessment Date | Tax Amount Assessed | Balance Due 10/25/2023 |
|---|---|---|---|
| *12/31/2011* | *12/10/2012* | *$ 248,553.32* | *$ 470,588.35* |
| *12/31/2016* | *11/27/2017* | *$ 236,445.00* | *$ 389,921.87* |
| *12/31/2021* | *11/21/2022* | *$   24,535.00* | *$   28,628.84* |
| ***Total Balance*** | | | ***$ 889,139.06*** |

**RESPONSE:** Admits.

25.      *On July 9, 2021, September 23, 2021, and October 26, 2021, Chase provided letters to the Higginses informing them that their COVID-19 payment assistance would be ending soon, on October 31, 2021.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

26.      *On May 18, 2022, Chase sent a letter to the Higginses advising them that they had been approved for a loan modification. As part of the modification, Chase advised the Higginses in the May 18, 2022 letter that Chase would adjust the unpaid principal balance of the Higginses' loan as follows:*

| | |
|---|---|
| *Current unpaid principal balance* | *$777,942.98* |
| *Interest* | *$233,664.33* |
| *Escrow advance* | *$139,426.86* |
| *Recoverable cost* | *$855.62* |
| *Less funds held in suspense* | *$(7,608.10)* |

*Adjusted unpaid principal balance $1,144,281.69*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

27. *Effective July 1, 2022, Chase and the Higginses entered into a Loan Modification Agreement. (Exhibit 7.) The parties agreed that the "New Principal Balance" was $1,144,281, which, pursuant to paragraph 2(B) of the Loan Modification Agreement (and as stated in Chase's May 18, 2022 letter set forth above), included all unpaid amounts and arrearages (excluding unpaid late charges), any outstanding amounts the payment of which may have been previously deferred under any prior agreement, including any deferred principal balances or other deferred balances and may include amounts toward taxes, insurance, or other assessments.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation, but admits the amended Exhibit 7 appears to match that described in the paragraph.

28. *In paragraphs 3C and 3D of the Loan Modification Agreement, John and Martha Higgins agreed that their Note and Mortgages with Chase are "valid, binding agreements, enforceable in accordance with their terms," and that all terms and provisions of the Note and Mortgages, "except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect," and "nothing in this [Loan Modification] Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the" Note or Mortgages.*

**RESPONSE:** Admits the paragraph accurately quotes the described portions of amended Exhibit 7.

29. *Defendants John and Martha Higgins defaulted on the Loan Modification Agreement.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

30.      *As of February 15, 2024, the pay off quote for the Higginses' loan is $1,286,425.01, good through March 14, 2024.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

### *COUNT I - JUDICIAL FORECLOSURE*

31.      *Plaintiff restates all preceding Paragraphs, as if fully set forth herein.*

**RESPONSE: N**o response required to this paragraph.

32.      *Plaintiff's Mortgage and Note have not been satisfied.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

33.      *Defendants John W. Higgins and Martha R. Higgins have defaulted under the terms of Plaintiff's Mortgages and Note and the Loan Modification Agreement by, among other ways, failing to make monthly payments as required, failing to pay property taxes that have therefore been advanced by Chase, and adversely affecting Chase's rights in the collateral by making Lot 18 unmarketable when the Higgins constructed the improvements causing the home to extend onto Lot 203.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

34.      *The interest in the Property held by Defendants John W. Higgins and Martha R. Higgins is subject to foreclosure of Chase's Mortgage, at least with respect to Lot 18, on which there is no*

*dispute by any party that Chase holds a valid mortgage that is superior to all other claims of interest.*

**RESPONSE:** The United States admits but only because it construes this allegation to avoid asserting that Chase has a superior claim in the entirety of the Property, including Lot 203.

*35.    Pursuant to MCL 600.3101 et seq. Chase is entitled to a judgment of foreclosure in the amount of the outstanding principal balance, late charges, advances and any and all fees, costs and/or expenses incurred by Chase that are recoverable pursuant to the provisions of its mortgage, including accrued interest at the contract rate and attorney fees and costs.*

**RESPONSE:** the United States admits that this allegation accurately describes the relief requested by Plaintiff but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation or whether Plaintiff is entitled to such relief, except that the United States avers that any attorney's fees Plaintiff incurs in seeking to reform its mortgage instruments to encumber Lot 203 (whether or not successful) and further seek foreclosure are not entitled to priority over the federal tax liens pursuant to 26 U.S.C. § 6323(e).

*36.    No other action has been brought to recover all or part of the debt secured by Chase's Mortgage.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

*37.    Plaintiff has exercised its right to accelerate the debt.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

*WHEREFORE, Plaintiff requests that this Honorable Court:*

      A.   *Enter a Judgment in favor of Plaintiff against Defendants John W. Higgins and Martha R. Higgins for foreclosure of its mortgage, at least as to Lot 18, and sale of the Property to satisfy the debt due and owing, including all amounts recoverable under the provisions of its mortgage;*

      B.   *Bar Defendants and all other persons claiming to or under Defendants John and Martha Higgins, from all rights and equity of redemption to the premises after six (6) months from the date of the sale;*

      C.   *Provide that the proceeds from said foreclosure sale be used to satisfy the outstanding debt due and owing to Chase and if the proceeds of said sale are insufficient to satisfy the outstanding debt, then Chase shall entitled to a judgment against Defendants John W. Higgins and Martha R. Higgins for any deficiency; and,*

      D.   *Whatever further relief this Court deems equitable and appropriate.*

**RESPONSE:** This paragraph states the requested relief, and so no response is required. Nevertheless, the United States contends that its entitlement to enforce its liens under 26 U.S.C. § 7403 as set forth in its counter/cross-claims through a judicial sale *without a right of redemption* preempts the Plaintiff's state-law remedies that would result in a lower sale price and less recovery for the federal tax liens.[1]

### *COUNT II - DETERMINE INTERESTS IN LAND*

38.    *Chase restates all preceding Paragraphs, as if fully set forth herein.*

**RESPONSE:** No response required to this paragraph.

---

[1] The United States often asks courts to apply a real estate agent as a receiver under 26 U.S.C. § 7403(d) so that a property may be sold in the same manner as a sale by owner, enabling recovery of full market value.

39.     *Chase's Mortgages refer to encumbering only Lot 18, as above described, but the common address description and PIN each encompass both Lots 18 and 203. At the time of the Mortgage, the Higgins's home was confined to Lot 18 and therefore fully marketable, whereas Lot 203 was not independently buildable and worth substantially less than Lot 18 if viewed individually.*

**RESPONSE:** The United States admits the Mortgage refers only to Lot 18 and admits the common address and PIN encompasses Lot 18 and Lot 203, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation.

40.     *When the Higginses used loan proceeds they received from Chase to pay for contracted construction improvements to the Property, they caused their dwelling to extend beyond Lot 18, onto Lot 203. In preparing to do so, they applied for and obtained approval before construction, in or around 2003 or 2004, to combine Lots 18 and 203 to be taxed together under a single Parcel ID 39-0500-0018-01-04.*

**RESPONSE:** The United States admits the dwelling extends onto Lot 203, but otherwise lacks knowledge or information sufficient to form a belief about the truth of the allegation.

41.     *The tax assessor's office for the Township of Buffalo, Berrien County, has confirmed that the Tax Parcel ID above-referenced has included both Lot 18 and Lot 203 since 2003 or 2004, in any event well before Chase's Mortgage was originated.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about the truth of the allegation.

42.     *The Defendants John and Martha Higgins were (and are) in title to Lot 18 and Lot 203 before Chase's Mortgage originated, but the permanent structure as originally built was placed*

13

*only on Lot 18 when the Higgins' obtained their loan from Chase in 2005, as the construction of*
*the improvement did not occur until after Chase's loan to the Higginses.*

**RESPONSE:** The United States admits John and Martha Higgins own title to Lot 18 and Lot
203, but otherwise lacks knowledge or information sufficient to form a belief about the truth of
the allegation.

*43.     The Higginses knew when they entered the loan with Chase that they planned to construct*
*improvements to the home that would cause it to extend onto Lot 203. It is Chase's honest and*
*reasonable belief that the parties to the Mortgage transaction mutually intended to for Chase's*
*Mortgage to encumber the Property that included the home that would be marketable for sale in*
*the event Chase undertook its foreclosure remedies, which now necessarily includes both Lot 18*
*and Lot 203, as a result of the improvements constructed by John and Martha Higgins. There*
*would be no rational or logical basis to extend a $1 million dollar loan that was secured by the*
*Property if the Property did not include the entire home and was not marketable for sale without*
*Lot 203, which was not the intention of the parties.*

**RESPONSE:** The United States lacks knowledge or information sufficient to form a belief about
the truth of the allegation but maintains it is legally irrelevant as the intent of Chase and the
Higginses does not bind the United States or otherwise alter its rights.

*44.     The fact that Tax Parcel ID 39-0500-0018-01-04 includes both Lot 18 and Lot 203 and*
*the common address for the property includes Lots 18 and 203 is further evidence of both the*
*parties' intent and that the Mortgage should be read to include both lots.*

**RESPONSE:** Denies.

*45.     As things presently stand, Chase may not have a first lien marketable title interest in and*
*to the Property, and may not unless the legal description of Plaintiff's Mortgage is reformed as*

14

*requested to include Lot 203 or this Court declares that the existing description in the Mortgages is sufficient to encompass Lot 203. Chase could foreclose on only Lot 18 pending this determination (see Count I) but would not be able to sell Property without Lot 203 and until there is a determination by this Court.*

**RESPONSE:** The United States admits the allegation, except expressly holds no opinion on whether Chase could foreclose on only Lot 18 without Lot 203, but notes such sale may violate the rights of the Higginses since such foreclosure would severely devalue the home.

*WHEREFORE, Plaintiff requests that this Honorable Court:*

    *A.  Enter a Judgment reforming Plaintiff's Mortgage legal description to include both Lot 18 and Lot 203 as above described or declaring that the Mortgages, as written, sufficiently describe and encompass both Lots 18 and 203;*

    *B.  Enter a Judgment holding that Plaintiff's Mortgage interest as to both lots constitutes a perfected first lien mortgage interest as to both lots dating from origination and recording of Plaintiff's Mortgage;*

    *C.  Grant such further relief as may be appropriate or equitable;*

    *D.  Allow such Judgment to be recorded to provide record evidence of the ruling of this Court.*

**RESPONSE:** This paragraph states the requested relief, so no response is required.

## *COUNT III – DECLARATORY JUDGMENT – ORDER OF PRIORITY OF INTERESTS IN PROPERTY*

*46.    There exists a Federal Tax Lien on the Property which the United States recorded on May 24, 2021. (Ex. 6.)*

**RESPONSE:** Admits.

47.     *Prior to the United States's recordation of its Tax Lien, on February 3, 2020, Chase recorded a Notice of Lis Pendens as to the Property in connection with this lawsuit. (Ex. 5.) The Notice of Lis Pendens specifically references this lawsuit by case number (of the Berrien County action prior to removal) and puts the world on notice, including the federal government, of this dispute in which Plaintiff asserts a superior and earlier-recorded interest in the Property.*

**RESPONSE:** The United States admits this paragraph accurately describes the Notice of Lis Pendens attached to the second amended complaint as Exhibit 5. As to the remainder of the paragraph, the United States lacks knowledge or information sufficient to form a belief about the truth of the allegation but denies that the priority of a federal tax lien can be undermined by a state-law *lis pendens*.

48.     *MCL 600.2701(1) provides for the filing of a notice of lis pendens in order "[t]o render the filing of a complaint constructive notice to a purchaser of any real estate . . . ." "'Generally, a lis pendens is designed to warn persons who deal with property while it is in litigation that they are charged with notice of the rights of their vendor's antagonist and take subject to the judgment rendered in the litigation.'" Richards v Tibaldi, 272 Mich App 522, 536; 726 NW2d 770 (2006), quoting Backowski v Solecki, 112 Mich App 401, 412; 316 NW2d 434 (1982). "A purchaser who acquires property after the commencement of a suit and the filing of a notice of lis pendens is bound by the proceedings because '[o]ne may not purchase any portion of the subject matter of litigation and thereby defeat the object of suit.'" Richards, 272 Mich App at 536, quoting Provident Mut Life Ins Co v Vinton Co, 282 Mich 84, 87; 275 NW 776 (1937).*

**RESPONSE:** The United States admits MCL 600.2701(1) and the cited cases are accurately quoted but reserves the right to contend that contrary federal law preempts the state law's application against the United States.

49.     *Thus, there is an actual controversy between Plaintiff and the United States under the*
*Declaratory Judgment Act, 28 U.S.C. § 2201, et seq, to the extent they each claim liens on the*
*Property and dispute the order of priority.*

**RESPONSE:** The United States observes that this is a pure contention of law and takes no
position. However, under the federal Declaratory Judgment Act, 28 U.S.C § 2201, federal district
courts lack subject matter jurisdiction over declaratory judgment actions relating to federal taxes
absent an exception or more specific federal statute. The United States nonetheless avers that
federal subject matter exists over this action under 28 USC § 2410 because it is an action to
foreclose real property on which the United States claims a lien and that, as part of an action
under § 2410, a court may determine the priority of liens and also may "quiet title" to property
which has sometimes been held to authorize determination of liens or other non-ownership
interests even when foreclosure is not imminent.

50.     *Therefore, a declaratory judgment is necessary for the purpose of settling and affording*
*relief from uncertainty with respect to the rights, status, and future legal relations between Chase*
*and the United States.*

**RESPONSE:**  The United States incorporates here its response to the preceding paragraph.

        *WHEREFORE, Plaintiff requests that this Honorable Court:*

        A.   *Enter a Declaratory Judgment for Chase that its interest in the Property,*
             *including as to both Lot 18 and Lot 203, is superior to the United States's interest*
             *in the Property;*

        B.   *Grant such further relief as may be appropriate or equitable.*

        C.   *Allow such Judgment to be recorded to provide record evidence of the ruling of*
             *this Court.*

**RESPONSE:** This allegation states the requested relief, and so no response is required.

## DEFENDANT UNITED STATES OF AMERICA'S CROSSCLAIMS AND COUNTERCLAIM

The United States of America, at the direction of a delegate of the Attorney General and with the authorization of a delegate of the Secretary of the Treasury, pursuant to 26 U.S.C. § 7401, brings the following crossclaims against defendants John W. Higgins and Martha R. Higgins, and counterclaim against plaintiff JPMorgan Chase Bank, National Association ("Chase") to collect the unpaid federal income tax liabilities of John and Martha Higgins and to enforce the liens of the United States securing those debts against the property, as defined below. The United States resubmits its crossclaims and counterclaim (originally filed as ECF No. 9) in its response pleading to Chase's second amended complaint, consistent with the Court's order issued on January 31, 2024 (ECF No. 29). For this crossclaim and counterclaim, the United States alleges as follows:

### Jurisdiction

1.      The district court has jurisdiction over the crossclaims and counterclaim pursuant to 26 U.S.C. §§ 7402 and 7403 and 28 U.S.C. §§ 1331, 1340, and 1345.

2.      The crossclaim defendant John W. Higgins resides in Berrien County, Michigan, within the jurisdiction of this Court and is one of the taxpayers and holds an ownership interest in the property described below.

3.      The crossclaim defendant Martha R. Higgins resides in Berrien County, Michigan, within the jurisdiction of this Court and is one of the taxpayers and holds an ownership interest in the property described below.

4.     The counterclaim defendant Chase claims an interest in the property described below by

virtue of the mortgage described in its complaint.

5.     The real property upon which the United States seeks to enforce its tax liens is located at

50102 Alpine Blvd., New Buffalo, Michigan 49117 (the "Property"), and is comprised of two

separately acquired parcels ("Lot 18 Parcel" and "Lot 203 Parcel"). The legal description of the

"Lot 18 Parcel is as follows:

> Lot 18, Alpine Valley, being a subdivision in part of the fractional Northwest
> quarter of fractional Section 17, and the fractional East half of Section 18,
> Township 8 South, Range 21 West, village of Grand Breach, Berrien County,
> Michigan, according to the Plat thereof recorded June 4, 1979 in Book 23 of Plats,
> Page 27.

Meaning to describe the property conveyed by North Beach Company, inc. to John W. Higgins

and Martha R. Higgins, as tenants by the entirety, by indenture recorded at book 1215, page 416

in the records of Berrien County, Michigan on September 26, 1984, as instrument 1984014231

("Lot 18 Parcel"). The legal description of the Lot 203 Parcel is as follows:

> Lot 203, New Park Addition to Grand Beach Springs, Sections 17 and 19,
> Township 8 South, Range 21 West, Village of Grand Breach, Berrien County,
> Michigan, according to the Plat thereof recorded March 10, 1923 in Book 6 of
> Plats, Page 48.

Meaning to describe the property conveyed by F.G. Connelly Mechanical Contractors, Inc. to

John W. Higgins and Martha R. Higgins, as tenants by the entirety, by corporate warranty deed

dated October 5, 2002, and recorded at book 2300, page 390 in the records of Berrien County,

Michigan on October 14, 2002, as instrument 2002041222 (the "Lot 203 Parcel").

**Count 1: Crossclaim to Reduce Federal Tax Liabilities to Judgment**

6.     The United States incorporates by reference paragraphs 1 through 5 as if specifically

realleged herein.

7.      A delegate of the Secretary of the Treasury made joint income tax assessments against John and Martha Higgins based upon their self-reported returns for the periods, on the dates, and in the amounts described below. These liabilities have balances due as of February 26, 2024, including assessed and accrued late payment penalties under 26 U.S.C. § 6651, and penalties for failure to make estimated tax payments under 26 U.S.C. §6654, costs and statutory interests, and after applying any abatements, payments, and credits through February 25, 2024, as follows:

| Tax Period Ending | Assessment Date | Tax Amount Assessed | Balance Due as of 02/26/2024 |
|---|---|---|---|
| 12/31/2011 | 12/10/2012 | $248,553.32 | $483,596.60 |
| 12/31/2016 | 11/27/2017 | $236,445.00 | $400,649.65 |
| 12/31/2021 | 11/21/2022 | $ 24,535.00 | $ 28,637.01 |
| Total Balance | | | $912,883.26 |

8.      Notice of the liabilities described in paragraph 8 was given to, and payment demanded from, John and Martha Higgins.

9.      Despite proper notice and demand, John and Martha Higgins failed, neglected, or refused to fully pay the liabilities, and after the application of all abatements, payments, and credits, they remain liable to the United States in the amount of $912,883.26 as of February 26, 2024.

10.     Although the assessment for the 2011 year was made more than ten years ago, this action is timely under 26 U.S.C. § 6502 because, pursuant to 26 U.S.C. §§ 6330(e), 6331(i)(5) and (k)(2), the limitations period was suspended (a) for a total of 130 days, based on installment agreements that were established with the taxpayers in calendar years 2012, 2014, 2016, and 2021, but subsequently terminated (resulting in 30 days of tolling for each terminated installment agreement plus another 10 days of tolling while the 2014 installment agreement request was pending), and (b) for another 217 days, during the period between August 1, 2013, when the IRS

received a timely request for a collection due process ("CDP") hearing, and March 6, 2014, when

the CDP hearing was resolved.

**Count 2: Claim Against All Parties to enforce Federal Tax Liens Against the Property**

11.     The United States incorporates by reference paragraphs 1 through 10 as if specifically

realleged herein.

12.     Because John and Martha Higgins neglected, refused, or failed to pay the liabilities

described in paragraph 7, after notice and demand, federal tax liens arose pursuant to 26 U.S.C.

§§ 6321 and 6322 on the dates of the assessments and attached to all property and rights to

property owned or later acquired by John and Martha Higgins, including the Property.

13.     In accordance with 26 U.S.C. § 6323(f), Notices of Federal Tax Lien ("NFTL") securing

the liabilities described in paragraph 7 were recorded at the Register of Deeds of Berrien County,

Michigan as follows:

| Tax Years | Date Recorded | Instrument number | Liber/Page |
|---|---|---|---|
| 2011 | 5/24/21 | 2021317179 | 3328/2349 |
| 2016 | 5/24/21 | 2021317179 | 3328/2349 |
| 2021 | 6/6/23 | 2023381997 | 3405/1560 |

14.     The NFTL covering the 2011 years was inadvertently allowed to expire, but on October

17, 2023, the IRS recorded a Certificate of Revocation of the release of the 2011 tax year lien at

the Register of Deeds of Berrien County as instrument 2023391185, which reinstated the lien.

15.     The United States is entitled to enforce the federal tax liens described in paragraphs 12

and 13 against the Property pursuant to 26 U.S.C. § 7403 and to have the entire Property sold in

a judicial sale (including by a receiver if requested by the United States), free and clear of all

rights, titles, claims, liens, and interests of the parties, including any rights of redemption, with

the proceeds of the sale distributed: first, to pay the costs of sale, including any expenses

incurred to secure and maintain the Property; second, in the priority stipulated to for Chase's payments of local property taxes; and third, to the United States to pay the liabilities described above, except to the extent that the Court determines that Chase or another party has a superior right, title, or interest.

WHEREFORE, defendant and counter and crossclaim plaintiff United States of America requests the following relief:

A.      Judgment against the defendants John and Martha Higgins, for the income tax periods ending December 31, 2011, December 31, 2016, and December 31, 2021, in the amount of $912,883.26, plus statutory additions and interest accruing from and after February 26, 2024, including interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c);

B.      A determination that the United States has valid and subsisting federal tax liens under 26 U.S.C. §§ 6321 and 6322 securing the liabilities described in paragraph A on the Property;

C.      An order enforcing the federal tax liens securing the liabilities described above pursuant to 16 U.S.C. § 7403 against the Property by ordering the sale of the entire Property in a judicial sale (including by a receiver if requested by the United Staes), free and clear of all rights, titles, claims, liens, and interest of the parties, including any rights of redemption, with the proceeds of the sale distributed: first, to pay the costs of sale, including any expenses incurred to secure and maintain the Property; second, in the priority stipulated to for Chase's payments of local property taxes; and third, to the United States to pay the liabilities described above, except to the extent that the Court determines that Chase or another party has a superior right, title, or interest; and,

D.      The United States shall recover its costs and be awarded such other and further

relief as the Court determines is just and proper.

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice Tax Division


*/s/ Sarah Stoner*
SARAH STONER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-514-1170 (v) / 202-514-5238 (f)
Sarah.Stoner@usdoj.gov