UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, N.A.,

    Plaintiff and Counter-Defendant

v.

JOHN W. HIGGINS AND MARTHA R. HIGGINS,

    Defendants and Cross-Defendants; and

THE UNITED STATES OF AMERICA,

    Defendant, Counter-Claimant,
    and Cross-Claimant.

Case No. 1:23-cv-1112

Hon. Robert J. Jonker

_____/

**ORDER**

Plaintiff JPMorgan Chase Bank filed this action against Defendants John and Martha Higgins ("the Higginses") and the United States to foreclose its mortgage interest in the Higginses' property in Grand Beach, Michigan. (ECF No. 33). The Higginses' house occupies portions of two adjoining lots—Lot 18 and Lot 203—and the couple have a recorded title interest in both lots. (*See id.*; ECF Nos. 51, 65–66). The Higginses have indisputably stopped making their mortgage payments, and the Mortgage states that non-payment constitutes default. But Chase's written mortgage interest describes only Lot 18—*not* Lot 203—meaning that a simple foreclosure on Lot 18 would leave Chase with a partial house and a property that is difficult or impossible to sell. (ECF No. 33). Further complicating the matter is the United States' outstanding tax lien on both lots. (*Id.*; *see* ECF No. 52).

Chase brought this action against the Higginses and the United States to foreclose its mortgage interest in Lot 18 (Count 1); reform the mortgage to encompass Lot 203 (Count 2); and,

as an alternative to reformation, request a declaration that Chase's Notice of *Lis Pendens* recorded on both lots prior to the Federal tax lien creates a superior interest in both lots. (ECF No. 33). Chase now moves for judgment on the pleadings on Count 1 and seeks judicial foreclosure on Lot 18. (ECF No. 54). For the following reasons, Chase's Motion for Judgment on the Pleadings on Count 1, (*id.*), is **GRANTED**.

## BACKGROUND

The Higginses' home is located at 50102 Alpine Boulevard in Grand Beach. (ECF No. 33 ¶ 2 at PageID.162). As shown below, the home is primarily on Lot 18, but it extends slightly into Lot 203:



(ECF No. 33-1 at PageID.174). The Higginses purchased and recorded title interests in Lot 18 and Lot 203 in 1984 and 2002, respectively, and in 2004, Berrien County assigned a single identification number to both lots for tax purposes. (ECF No. 33 ¶¶ 2, 4, 10–12 at PageID.163–64).

On March 16, 2005, the Higginses obtained a $999,999.00 mortgage loan ("the Mortgage") and a $58,500.00 future advance mortgage loan ("the Future Advance Mortgage") from Chase, secured by the following property:

> *Lot 18, Alpine Valley, being a subdivision in part of the fractional Northwest quarter of fractional Section 17, and the fractional East half of Section 18, Township 8 South, Range 21 West, Village of Grand Beach, Berrien County, Michigan, according to the Plat thereof recorded June 4, 1979 in Book 23 of Plats, Page 27.*
>
> *The Real Property or its address is commonly known as 50102 Alpine Road, New Buffalo, MI 49117. The Real Property tax identification number is 11-39-0500-0018-01-4.*

(ECF No. 33-3 at PageID.180; ECF No. 33-4 at PageID.194). Critically, the legal description of the property covered by the Mortgage does *not* explicitly reference Lot 203.

In 2016, the Higginses stopped making payments on the Mortgage and stopped paying property taxes. (ECF No. 33-3 ¶¶ 22, 33; *see* ECF No. 33-3 at PageID.186). In January 2020, Chase filed a foreclosure action in State court and recorded a Notice of *Lis Pendens* on Lots 18 and 203. (ECF No. 33 ¶ 22 at PageID.165; ECF No. 1-1; ECF No. 33-5 (Notice of *Lis Pendens*)). About a year later—in May 2021—the United States recorded Federal tax liens on Lots 18 and 203 for $912,883.26 in back taxes, fees, and interest. (ECF No. 33-6 (Tax liens); ECF No. 52 at PageID.312–316).[1]

On July 1, 2022, Chase and the Higginses negotiated a Loan Modification Agreement. (ECF No. 33-7 (Loan Modification Agreement)). The parties agreed to a "New Principal Balance" of $1,144,281, and the contract reiterated the validity and enforceability of the original Mortgage.

---

[1] The government claims the total unpaid taxes actually total about $3.6 million. (ECF No. 33-6 at PageID.211). Most of this amount, however, was outside the statute of limitations at the time the government filed its tax lien, which is why the United States' crossclaims only seek to recover $912,883.26. (ECF No. 52 at PageID.313). The Higginses dispute the tax lien, but those crossclaims are not at issue here.

(ECF No. 33 ¶ 28 at PageID.167; ECF No. 33-7).  But the Higginses eventually stopped making payments on the Loan Modification Agreement, too.  (ECF No. 33 ¶ 28 at PageID.167).

The current pay-off quote for the Higginses' Mortgage is $1,286,425.01.  (*Id.* ¶ 30 at PageID.167).  Chase moves for judgment on the pleadings on its judicial foreclosure claim for Lot 18 (Count 1).  *See* Fed. R. Civ. P. 12(c).  (ECF No. 33 ¶¶ 31–37 at PageID.167–68).  The United States does not oppose Chase's Motion.[2]

## ANALYSIS

**A.  Legal Standards.**

Fed. R. Civ. P 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Judgment on the pleadings is appropriate "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007); Fed. R. Civ. P. 12(c).  In applying this standard, the Court construes the pleadings in the light most favorable to the non-moving party—here, the Higginses.  *See Winget*, 510 F.3d at 582.  This means that the Court must take all of the well-pleaded factual allegations in the Higginses' Answer as true and draw all reasonable inferences in the Higginses' favor.  *See, e.g.*, *Lowden v. Cnty. of Clare*, 709 F. Supp. 2d 540, 546 (E.D. Mich. 2010), and cases cited; *see also* 12 C. Wright & A. Miller, Federal Practice and Procedure § 1368 (3d ed. Feb. 2024 update) ("The plaintiff may not secure a judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery.").  Stated differently, the Court should only grant Chase's Motion if the

---

[2] The United States maintains, however, that its tax lien is superior to any interest Chase has in Lot 203.  (ECF No. 67; *see also* ECF No. 52 at PageID.312–316).  This Order—which only addresses Chase's right to foreclose its mortgage interest in Lot 18—does not address this issue.

Higginses' Answer "admits, alleges, or fails to deny" facts alleged in Chase's Complaint that—taken as true—would entitle Chase to relief on Count 1.  *See Lowden*, 709 F. Supp. 2d at 546.

**B.     Judicial Foreclosure.**

In their Answer, the Higginses "deny" and "disagree" with Chase's allegations that they "defaulted" on the Mortgage and Loan Modification Agreement.  (ECF No. 51 ¶¶ 22, 33 at PageID.288–89).[3]  But even though Chase must "conced[e] the accuracy of the *factual allegations* in [the Higginses'] pleading," Federal Practice and Procedure § 1368 (emphasis added), the Higginses' "den[ials]" and "disagree[ments]" that they "defaulted" on the Mortgage are legal conclusions—not factual allegations.  Accordingly, in evaluating Chase's Rule 12(c) Motion, the Court "need not accept [these assertions] as true."  *Winget*, 510 F.3d at 581 (quotation omitted).

When the Court focuses on the Higginses' well-pleaded factual allegations—as it must—it is apparent that Chase is entitled to judgment on the pleadings on Count 1.  In their Answer, the Higginses admit each of the underlying facts Chase needs to prove in order to prevail on its claim that it can foreclose on Lot 18 because the Higginses defaulted on the Mortgage.  The Higginses admit that they obtained the Mortgage on Lot 18 from Chase in March 2005, (ECF No. 51 ¶¶ 2, 7, 13–16, 34 at PageID.288–90); that they stopped making payments on the Mortgage and then later, on the Loan Modification Agreement, (*id.* ¶¶ 22, 26–29, 32, 34 at PageID.289–90; *see* ECF No.

---

[3]     Confusingly, the Higginses' appear to backtrack on these "deni[als]" and disagree[ments]" by expressly admitting that they "defaulted on the Loan Modification Agreement," (ECF No. 51¶ 29 at PageID.289*)*, and that Chase's mortgage interest in Lot 18 is "subject to foreclosure" due to non-payment, (*id.* ¶ 34 at PageID.290).  Because the Higginses' are *pro se* Defendants, the Court will give them the benefit of the doubt and disregard these (likely) errant concessions.  But for the reasons discussed below, this has no impact on the Court's ultimate result, because the Higginses' have indisputably admitted each fact that Chase must establish to prove that the Higginses defaulted on the Mortgage—and thus, that Chase is entitled to foreclose on Lot 18.

65 at PageID.360); that the Mortgage has "not been satisfied," (ECF No. 51 ¶ 32 at PageID.290); and that they currently owe Chase $1,286,425.01, (*id.* ¶ 30 at PageID.289).

The Higginses' brief opposing Chase's Motion does not attempt to retract these critical admissions. Instead—harking back to their Answer's conclusory denials of "default"—the couple baldly asserts that even though they "are not current on their principle [sic] and interest payments . . . [t]his may not be a default on their loan." (ECF No. 65 at PageID.360–61). The Court agrees that—as a general matter—not all instances of non-payment amount to default. But the Higginses' Mortgage, accompanying Promissory Note, the Future Advance Mortgage, and the Loan Modification Agreement attached to Chase's Second Amended Complaint all unambiguously state that the Higginses' failure to make timely payments constitutes default and triggers Chase's right to foreclose on Lot 18. *See, e.g.*, *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (courts can consider exhibits attached to the complaint when deciding Rule 12(c) motions). Because nonpayment unquestionably occurred here, it follows that default occurred as well.

The Higginses' brief also appears to attack the validity of the Mortgage. They argue that Chase created this situation for itself by "ch[oosing] to only include Lot 18 in its mortgage" despite the fact that the house already extended onto Lot 203 in 2005. (*See, e.g.*, ECF No. 66 at PageID.368, 371–72). They also contend that "common sense" dictates against foreclosing on a lot with a partial house. (*See, e.g.*, *id.* at PageID.375). The fact that Lot 18 only contains part of the house certainly creates practical hurdles for Chase in trying to sell the property. But the Higginses provide no support for the claim that these potential marketability issues legally invalidate Chase's mortgage interest in Lot 18, and the Court can find none.

Moreover, as Chase points out in its reply brief, "[i]n theory, Chase could purchase Lot 18 itself at [a] sheriff's sale with a credit bid [right now], evict the Higginses from Lot 18, and later

sell Lot 18 and Lot 203 once the remaining [Federal tax lien] issues with respect to Lot 203 are judicially resolved or settled amongst the parties." (ECF No. 72 at PageID.407).  Indeed, Chase even hints that this result is "likely" and that it plans to cooperatively seek the appointment of a receiver with the United States to sell the two lots and divide the sale proceeds.  (*Id.*).

The Higginses are indisputably in default on their Mortgage; the Mortgage indisputably covers at least Lot 18; and the United States' interest in Lot 18 is indisputably junior to that of Chase.  Accordingly, Chase—as the Mortgage holder—is entitled as a matter of law to foreclose its interest on Lot 18 against the Higginses.

**IT IS THEREFORE ORDERED** that Plaintiff JPMorgan Chase Bank's Motion for Partial Judgment on the Pleadings with respect to Count 1, (ECF No. 54), is **GRANTED**.  *See* Fed. R. Civ. P. 12(c).


Dated: May 3, 2024                              /s/ Robert J. Jonker
                                                ROBERT J. JONKER
                                                UNITED STATES DISTRICT JUDGE