*JPMorgan Chase Bank, National Association. v. John W. Higgins, et al.*
*Case No. 1:23-cv-01112 (W.D. Michigan)*

## **SETTLEMENT AGREEMENT**

This Settlement Agreement (the "Agreement") is entered by and among Defendant United States of America (the "United States") and Plaintiff JPMorgan Chase Bank, National Association ("Chase") (each a "Party," and collectively, the "Parties") in order to settle their respective claims against one another in the above-referenced civil action (the "Case") and otherwise with respect to the property located at 50102 Alpine Blvd., New Buffalo, MI 49117 (the "Property"), title to which is held by John W. Higgins and Martha R. Higgins ("the Higginses" or the "taxpayers"), who are not parties to this agreement.

*Recitals*

WHEREAS, Chase initiated the Case seeking foreclosure of its mortgage and sale of the Property. In its complaint, Chase also seeks to reform the mortgage to encumber the second of two lots (Lot 18 and Lot 203) that makeup the legal description for the Property's street address (Lot 18 being already expressly encumbered by the mortgage).

WHEREAS, The United States filed a counterclaim and crossclaim against the taxpayers to reduce their federal income tax liabilities for tax years 2011, 2016, and 2021 to judgment and a claim against all parties to enforce the federal tax liens against the Property through a judicial sale pursuant 26 U.S.C. § 7403.

WHEREAS, the applicable notice of federal tax lien ("NFTL") for the liabilities from tax years 2011 and 2016 was first filed with the Berrien County registry of deeds against the Property on May 24, 2021, at Liber 3328, Page 2349, as instrument number 2021317179. The NFTL for liability for tax year 2021 was recorded against the property on June 6, 2023, at Liber 3405, Page 1560 with the Berrien County registry of deeds as instrument number 2023381997.

WHEREAS, following the court order issued January 31, 2024, Chase filed a second Amended Complaint on February 16, 2024, and the United States refiled its counter/cross-claim on March 8, 2024.

WHEREAS, the United States and Chase share an interest in enforcing their respective liens on the Property currently owned by defendants John W. and Martha R. Higgins. The Higgins have yet to assert a viable defense to Chase's ability to foreclose its mortgage nor the United States' ability to enforce the tax liens on the Property.

NOW, THEREFORE, in order to resolve all claims between the Parties, the Parties hereby agree as follows:

*Appointment of Receiver and Sale of the Property*

1. The Parties agree Chase has superior lien on Lot 18 and the United States has a superior claim on Lot 203 unless Chase's mortgage is reformed and further agree that the two lots should only be sold as a single property. The parties agree that, assuming the Property is sold, this agreement should be considered to moot the issue of whether the mortgage should be reformed since, if the Property is sold, this agreement will accord the United States a percentage of the proceeds that is at least commensurate with the value of Lot 203 as

1

compared to Lot 18. However, this agreement shall remain valid and binding notwithstanding a judicial ruling that the issue is not mooted by this agreement.

2. Chase agrees to allow the United States to appoint a local real estate agent as the receiver, pursuant to 26 U.S.C. § 7403(d), to sell the Property pursuant to its counterclaim, free and clear of the rights of all parties to the Case (including the Higginses) and without any right of redemption, with the court's approval of the appointment of the receiver and subsequent approval of any purchase/sale agreement between the receiver and a prospective purchaser. Any such sale proposed by the receiver shall first require the approval of the Parties to this agreement except that either Party may move the court to approve a sale contract upon a showing that the other Party's objection is not reasonable in light of all the circumstances. Per the United States' usual procedures under § 7403(d), the receiver will be asked to agree to be compensated in the same manner as a real estate agent retained by the private owner. The motion to appoint a receiver will include customary provisions giving all parties, including the Higginses, a chance to object to any proposed listing price and also to the approval of any purchase and sale agreement executed by the receiver.

3. Prior to the United States seeking the Court's approval, the United States will propose to Chase the receiver to be appointed and permit Chase three (3) days to veto the receiver. A veto must be made with good cause.

*Distribution of the Sale Proceeds*

4. Upon sale of the Property, the sale proceeds shall be distributed as follows:

    a. First, to cover costs and expenses of the sale including the commission of the real estate agent and any buyer's agent with whom the commission must be shared.

    b. Second, to pay any unpaid county property taxes accrued through the date of a closing on the sale as well as the value of the county property taxes that Chase has been continuing to pay, in accordance with previous stipulation (ECF No. 27).

    c. If the remaining sale proceeds ("net proceeds") equal or exceed 100% of indebtedness secured by Chase's mortgage, the remainder is to be split and distributed as follows:

        i. To Chase, in the amount equivalent to 90% of the indebtedness secured by its mortgage;

        ii. To the United States up to the full amount of its tax liens as of the date of closing;

        iii. To Chase for the remaining 10% of the indebtedness secured by its mortgage

        iv. To the Higginses to the extent of any surplus.

    d. However, if the remaining sale proceeds do not equal or exceed 100% of indebtedness secured by Chase's mortgage, the remainder is to be split and distributed as follows:

        i. To the United States, in the amount of the greater of either 10% of the net proceeds or 5% of the tax liabilities claimed;

      ii. The remainder to Chase.

<em>Miscellaneous</em>

5. The Parties recognize and agree that it may be necessary to have all or part of the net proceeds deposited into the registry of the Court if a sale precedes the final adjudication of their respective claims against the Higginses.

6. The Parties do not believe that this agreement requires approval of the Court. This agreement shall be attached to an appropriate notice or motion, which may be a motion to appoint a receiver. Should the Court conclude that this agreement does require its approval, then the Parties agree to jointly seek such approval.

7. The Parties shall bear their own costs in the Case, including any attorney's fees.

8. This Agreement constitutes the Parties' entire agreement and nothing may vary its terms unless subsequently agreed to in writing by the Parties.

SO AGREED:

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice Tax Division

*/s/ Sarah Stoner*
SARAH STONER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
T: (202) 514-1170 / F: (202) 514-5238
Sarah.Stoner@usdoj.gov

*/s/ Mark Magyar* (with permission)
MARK J. MAGYAR
Dykema Gossett PLLC
Counsel for JPMorgan Chase Bank, N.A.
201 Townsend St., Suite 900
Lansing, MI 49301
(616) 776-7523
mmagyar@dykema.com

Dated: August 14, 2024