UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, | ) | |
| NATIONAL ASSOCIATION, | ) | Case No. 1:23-cv-01112 |
| | ) | |
|     Plaintiff, | ) | Hon. District Judge Robert J. Jonker |
| | ) | Magistrate Judge Sally J. Berens |
|     v. | ) | |
| | ) | |
| JOHN W. HIGGINS, | ) | |
| MARTHA R. HIGGINS; and the | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Counterclaim/Crossclaim Plaintiff, | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| JOHN W. HIGGINS, | ) | |
| MARTHA R. HIGGINS; | ) | |
| | ) | |
|     Crossclaim Defendants, | ) | |
| | ) | |
|     And | ) | |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
|     Counterclaim Defendant. | ) | |

**BRIEF IN SUPPORT OF UNITED STATES' MOTION FOR**
**SUMMARY JUDGMENT**

i

## <u>TABLE OF CONTENTS</u>

Table of Authorities ..................................................................................................... iii

Concise Statement of Reasons in Support of Summary Judgment for United States .................... iv

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............................................... 1

III. ARGUMENT ........................................................................................................ 5

    A.  Standard of Review .......................................................................................... 5

    B.  No Dispute Exists that Mr. and Mrs. Higgins have Unpaid Income Tax Liabilities for Tax Years 2011, 2016, and 2021. ....................................................................... 6

    C.  No Dispute Exists that Tax Liens Securing Liabilities for 2011, 2016, and 2021 Attached to the Property. ................................................................................. 7

    D.  No Other Dispute of Material Fact Exists to Challenge the Liability the Higginses Owe to the United States and the United States Ability to Enforce ................................. 8

        i.   Any previous pause on administrative collection efforts due to "Uncollectible" status set by the IRS holds no bearing on the current liabilities. ................................. 9

        ii.  The United States timely brought suit within the Statutory Limitations on Time to Collect for Each of the Liabilities. ............................................................. 10

        iii. No dispute exists as to the United States' ability to enforce its liens by way of receiver sale. ................................................................................................ 13

    E.  The United States is Entitled to Judgment as a Matter of Law ................................. 13

    F.  The United States is Entitled to an Order Allowing it to Nominate a Receiver for Appointment by the Court ....................................................... 14

IV. CONCLUSION .................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Statutes**

26 U.S.C. § 6321 .................................................................................................5, 7, 14, 16
26 U.S.C. § 6322 ......................................................................................................5, 14, 16
26 U.S.C. § 6331(k)(2) ....................................................................................................11, 12
26 U.S.C. § 6502 ..............................................................................................4, 5, 10, 11, 12
26 U.S.C. § 6503(a)(1) ...........................................................................................................11
26 U.S.C. § 6601 ..............................................................................................................7, 16
26 U.S.C. § 6621 ..............................................................................................................7, 16
26 U.S.C. § 6622 ....................................................................................................................16
26 U.S.C. § 6323 ................................................................................................................4, 8
26 U.S.C. § 6325(f)(2) ............................................................................................................8
26 U.S.C. §7403 ...................................................................................................... 13, 14, 15

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).............................................................................................6
*Baker v. City of Trenton*,
   936 F.3d 523 (6th Cir. 2019) ................................................................................6
*United States v. Hillman*,
   60 F. App'x 563 (6th Cir. 2003) ..........................................................................8
*United States v. Jackson*,
   511 Fed.Appx. 200 (3d Cir. 2013) .....................................................................10
*United States v. Kain*,
   2017 WL 5176696 (N.D. Ind. October 13, 2017)..............................................15
*United States v. Manley*,
   No. 2:20-cv-02598-TLP-CGC, 2021 U.S. Dist. LEXIS 205084 (W.D. Tenn. Oct. 25, 2021) ....................................................................................................................9
*United States v. Morgan*,
   2021 WL 3421708 (D.Conn. August 5, 2021)...................................................15
*United States v. Morrison*,
   2012 WL 9245966 (D.N.H. Jan. 23, 2012)........................................................14
*United States v. Newman*,
   2023 WL 7413349 (D.Me. Nov. 9, 2023)..................................................... 10, 15
*United States v. Poteet*,
   792 F. Supp. 2d 1201 (D.N.M. 2011) ................................................................15
*United States v. Smith*,
   2008 WL 4960430 (S.D. Ohio Nov. 19, 2008)..................................................14
*United States v. Thody*,
   2022 WL 2230169 (W.D. Mich. June 9, 2022) .................................................15
*United States v. Wagster*,
   2017 WL 4479730 (E.D. Mich. Oct. 5, 2017) ...................................................15
*Wilmington Savings Fund Society FSB v. Cosmano*,
   2022 WL 160286 (N.D. Ill. 1922) .....................................................................15

**Rules**

Fed. R. Civ. P. 8(b)(6)............................................................................................3, 6, 12

Fed. R. Civ. P. 56(a) ...................................................................................................5

## <u>CONCISE STATEMENT OF REASONS IN SUPPORT OF<br>SUMMARY JUDGMENT FOR UNITED STATES</u>

The United States is entitled to judgment in this case because no dispute of material fact exists as to the federal income tax liabilities against John and Martha Higgins for tax years 2011, 2016, and 2021. The transcripts included with the attached Declaration of Barry Hoops creates prima facie case of the tax liability and the Higginses do not have a defense to these tax liabilities. The United States timely filed the crossclaim to enforce each tax liability and is statutorily entitled to enforce the tax liens for the tax liabilities through a judicial sale (including by a court appointed receiver).

## I.     INTRODUCTION

The United States seeks judgment against John and Martha Higgins (the "Higginses") for tax liabilities owed by the Higginses and to enforce the related tax liens against their real property. No real dispute of material fact exists on the validity of the tax liabilities owed and the United States' right to enforce the valid liens to sell the property to satisfy those liabilities. This brief details the absence of dispute and the judgment owed in favor of the United States.

Plaintiff JPMorgan Chase Bank, N.A. ("Chase") also seeks to collect on a defaulted mortgage held by the Higginses. Chase received a judgment to foreclose on a portion (Lot 18) of the property at issue. ECF No. 74. Because there was still an outstanding issue regarding the other portion (Lot 203), without which the property is unsellable, Chase has not moved for judicial sale. But, in light of its Settlement Agreement with the United States (ECF No. 81-1), Chase supports this motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Higginses own real property located at 50102 Alpine Blvd., New Buffalo, Michigan 49117 (the "Property"). ECF No. 51, PageID.288. The Property includes two parcels: "Lot 18" and "Lot 203." The legal description of the Lot 18 parcel is as follows:

> Lot 18, Alpine Valley, being a subdivision in part of the fractional Northwest quarter of fractional Section 17, and the fractional East half of Section 18, Township 8 South, Range 21 West, village of Grand Breach, Berrien County, Michigan, according to the Plat thereof recorded June 4, 1979 in Book 23 of Plats, Page 27.

Meaning to describe the property conveyed by North Beach Company, Inc. to John W. Higgins and Martha R. Higgins, as tenants by the entirety, by indenture recorded at book 1215, page 416 in the records of Berrien County, Michigan on September 26, 1984, as instrument 1984014231. The legal description of the Lot 203 parcel is as follows:

> Lot 203, New Park Addition to Grand Beach Springs, Sections 17 and 19, Township 8 South, Range 21 West, Village of Grand Breach, Berrien County, Michigan, according to the Plat thereof recorded March 10, 1923 in Book 6 of Plats, Page 48.

Meaning to describe the property conveyed by F.G. Connelly Mechanical Contractors, Inc. to John W. Higgins and Martha R. Higgins, as tenants by the entirety, by corporate warranty deed dated October 5, 2002, and recorded at book 2300, page 390 in the records of Berrien County, Michigan on October 14, 2002, as instrument 2002041222.

Chase initiated this case seeking foreclosure of its mortgage and sale of the Property. In its complaint, Chase also seeks to reform the mortgage to encumber the second of the two lots (Lot 18 and Lot 203) that makeup the legal description for the Property's street address (Lot 18 being already expressly encumbered by the mortgage). After being named a party in Chase's First Amended Complaint, the United States filed crossclaims on November 9, 2023, against the Higginses to reduce the income tax liabilities for tax years 2011, 2016, and 2021 to judgment and a counterclaim/crossclaim to enforce the tax liens for those liabilities against the Property. ECF No. 9. The Court ordered all pleadings be refiled (ECF No. 29), so the United States filed its answer to Chase's Second Amended Complaint and restated its crossclaims against the Higginses and counterclaim against Chase on March 8, 2024 (ECF No. 52). The crossclaims/counterclaim seek: 1) a claim against the Higginses to reduce their joint federal income tax liabilities to judgment for tax years 2011, 2016, and 2021; and 2) a claim against the Higginses and Chase to enforce the tax liens against the Property.

The Higginses filed joint-married tax returns for tax years 2011, 2016, and 2021. The Higginses reported the income taxes on their Form 1040 Income Tax Returns for 2011, 2016, and 2021, and delegate of the Secretary of the Treasury assessed the same amounts as reported on the dates indicated below. The following also shows updated amounts owed reflecting

2

assessed and accrued late payment penalties under 26 U.S.C. § 6651, and penalties for failure to

make estimated tax payments under 26 U.S.C. § 6654, costs and statutory interests, and after

applying any abatements, payments, and credits:

| Tax Period Ending | Assessment Date | Tax Amount Assessed | Balance Due as of 08/14/2024 |
|---|---|---|---|
| 12/31/2011 | 12/10/2012 | $245,346.00 | $502,004.31 |
| 12/31/2016 | 11/27/2017 | $236,495.00 | $415,815.55 |
| 12/31/2021 | 11/21/2022 | $ 24,575.00 | $ 30,154.51 |
| | | **Total Balance:** | **$947,974.37** |

Declaration of Barry Hoops ("Hoops Decl."). The tax amounts deviate slightly from those set

forth in the crossclaim at ECF No. 52, PageID.313.[1]

Importantly, the Higginses do not deny that they filed and reported the assessed liability

amounts. Rather, they assert the liabilities were deemed "not collectible"—mistakenly believing

this eliminated the liabilities—but otherwise failed to deny and therefore admitted the liabilities

were assessed and are owed. Fed. R. Civ. P. 8(b)(6). On or about the date of these income tax

assessments, a delegate of the Secretary of the Treasury gave notice and made a demand for

payment of the balance due. Hoops Decl. ¶ 7. The Higginses mistakenly pointed to the letter they

submitted as Exhibit A to their crossclaim answer to show demand and notice were not issued,

ECF No. 71, PageID.391; however, they were notified of each liability and demanded payment

---

[1] The amounts represented in the column "Tax Amount Assessed" in the United States' Amended Crossclaims, ECF No. 52, PageID.313—differ slightly from the amounts reported in this table as "Tax Amount Assessed." For 2011, the United States incidentally included part of the penalties that were included in a payoff amount provided to counsel by the IRS. The very small differences in 2016 and 2021 in the same column in ECF No. 52 reflect typographical errors in transferring the IRS's recorded amounts to the pleading. The values under this "Tax Amount Assessed" column now accurately reflect the assessments as they were reported on the Higginses' tax returns and as reflected in the Hoops Declaration and the transcripts for each liability that are attached to the Hoops Declaration.

from at or around the time of the assessments. Hoops Decl. ¶ 7.  The Higginses received further notices of the liabilities as the Internal Revenue Service ("IRS") attempted to collect.

The IRS filed notices of federal tax liens ("NFTL") to secure these income tax liabilities in accordance with 26 U.S.C. § 6323(f). The NFTLs were initially recorded at the Register of Deeds of Berrien County, Michigan as follows:

| Tax Years | Date Recorded | Instrument number | Liber/Page |
|---|---|---|---|
| 2011 | 5/24/21 | 2021317179 | 3328/2349 |
| 2016 | 5/24/21 | 2021317179 | 3328/2349 |
| 2021 | 6/6/23 | 2023381997 | 3405/1560 |

The NFTL covering the 2011 year was inadvertently allowed to expire, but on October 17, 2023, the IRS recorded a Revocation of Release of Federal Tax Lien for the 2011 tax year lien at the Register of Deeds of Berrien County as instrument 2023391185, which reinstated the lien. Hoops Decl. ¶ 27. A separate NFTL for the 2011 liability was then filed on November 13, 2023, as instrument 2023392757. *Id.* Due to a clerical error, the freeze code indicating the filing of the government's crossclaims was not entered into the IRS database, causing the system to automatically record a write-off of the balance due on the mistaken premise that the collection statute expiration date ("CSED") had passed. Hoops Decl. ¶ 28. After identifying this error, the database was corrected to reflect the filing of the crossclaim for judgment on the Higginses' tax liabilities, which eliminated the CSED pursuant to 26 U.S.C. § 6502. *Id.* This reinstated the full balance of the liability, and updated the transcripts to reflect that. Hoops Decl. ¶ 29. The erroneous write-off of the 2011 liability was initially assumed to have also resulted in an automatic release of the related lien, prompting the IRS to file another revocation of release and new NFTL on August 7, 2024, as instrument numbers 2024411394 and 2024411395, respectively. The United States maintains the NFTL recorded November 13, 2023, was not

affected by the revocation of a release that never existed but, assuming the revocation of release somehow nullified the November 13, 2023 NFTL, the August 7, 2024 NFTL has replaced it.

### III.    ARGUMENT

The Higginses chose not to expressly deny the federal income tax liabilities they owe and instead attempted to claim the liabilities became unenforceable because they were at one time deemed uncollectible by the IRS. However, the letter they filed as Exhibit A with their answer expressly stated "you still owe the IRS an amount(s)" and went on to include various caveats regarding future rights of the IRS to collect the liabilities. ECF No. 71-1, PageID.401. The facts from the pleadings support judgment against the Higginses for the tax liabilities and for the United States to collect by enforcing its liens.

The only protentional dispute of material fact from the pleadings, without considering actual evidence, is the enforceability of the liability for 2011 because the Higginses constructively denied the timely enforcement of the 2011 liability by claiming ten years has passed and the amount is no longer owed. ECF No. 71, PageID.392. For tax years 2016 and 2021, which are less than ten years old, no fact exists to dispute that the Higginses owe the federal income tax liabilities and that liens for those liabilities exist against the Property, which permits the United States to enforce those liens. *See* 26 U.S.C. §§ 6321, 6322, and 6502. The evidence exchanged in discovery, further supported by a declaration from an IRS agent, shows no dispute of material fact exists for 2011. For the reasons described below, the Court should grant this motion.

### A.    Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once the moving party has met the initial burden of showing the absence of a genuine dispute of material

fact, the non-moving party must then 'come forward with specific facts showing that there is a genuine issue for trial.'" *Baker v. City of Trenton*, 936 F.3d 523, 529 (6th Cir. 2019) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 247.

**B.      No Dispute Exists that Mr. and Mrs. Higgins have Unpaid Income Tax Liabilities for Tax Years 2011, 2016, and 2021.**

The income tax liabilities the United States seeks to reduce to judgment and enforce were originally assessed based upon the returns the Higginses filed, as married joint-filers, for tax years 2011, 2016, and 2021. Hoops Decl. ¶ 6; *see also* ECF No. 71 PageID.390-391 (Higginses do not deny, thereby admit, the taxes assessed were based upon the returns they filed, *see* Fed.R.Civ.P. 8(b)(6)). The Higginses voluntarily reported these liabilities and signed and filed the returns under penalty of perjury. The Higginses cannot now dispute the reported liabilities.[2] As explained below, the additional penalties and interest are mathematical functions of the tax. The self-reported liabilities and the penalties and interest accrued in accord with the set functions totaled, as of August 14, 2024, $947,974.37 for tax years 2011, 2016, and 2021. Hoops Decl. ¶ 32.

---

[2] The Higginses' response in their combined answer stated they "disagree with the February 25, 2024 amounts owed." ECF No. 71, PageID.391. However, they voluntarily reported and signed the liabilities on their filed returns and rely on an IRS determination of "currently not collectible," which has no bearing on this case as described in Section III.B.ii.

The "plain English transcripts" included with the Hoops Declaration show the tax assessments and the interest and other additions that have accrued since the assessments. These transcripts reflect that, after assessment, the IRS recorded, among other things, the following additions authorized by statute: (1) penalties for not pre-paying tax under I.R.C. § 6654, in the amount of § 6621 underpayment interest between the due dates of estimated quarterly pre-payments and the due date of the return; and (2) penalties for late payment of tax under I.R.C. § 6651(a)(2), to a maximum of 25% of the tax shown on the return. Meanwhile, underpayment interest accrued and continues to accrue on all of these liabilities pursuant to I.R.C. § 6601 at the rates provided under §§ 6620 and 6621. The table in paragraph II provides the amounts owed on each liability as of August 14, 2024.

### C.   No Dispute Exists that Tax Liens Securing Liabilities for 2011, 2016, and 2021 Attached to the Property.

Assessment of the liabilities for tax years 2011, 2016, and 2021 recorded the liability amounts reported on the returns and the existence of tax liens attaching to the Property followed automatically. When a taxpayer, such as the Higginses, "neglects or refuses to pay" tax "after demand," then a lien arises and automatically attaches to "all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. §6321. Notice and demand for each tax liability was given, as a matter of course.[3] Hoops Decl. ¶ 7. Thus, tax liens

---

[3] The Higginses' response in their combined answer stated "*[p]ursuant to Exhibit A*, payment demand for John and Martha Higgins was not made, the case was closed and deemed currently not collectable." ECF No. 71, PageID.391 (emphasis added). In pointing to the letter they reference as Exhibit A, the letter was received years after assessment of liabilities and in fact supports the Higginses knew of the liabilities and failed to pay them. The letter itself states that "you still owe the amount(s)." EDF No. 71-1, Page ID.400. The Higginses mistakenly assert the later determination to temporarily stop seeking payment reflected in the letter for the notice and demand issued as a matter of course upon assessment. *See* Hoops Decl. ¶ 7.

automatically arose as of the dates of assessment, pursuant to 26 U.S.C § 6321, and attached to all of the Higginses' property, including the Property.

Notices of Federal Tax Liens are not required for tax liens to exist and encumber the taxpayer's property and are only needed to prevent the liens from being considered "not valid" against purchasers, holders of security interests, judgment lien creditors, or mechanics lienors as spelled out in 26 U.S.C. § 6323. As indicated above, NFTLs were filed for all three years but the NFTL for 2011 released in early 2023 due to the failure to timely refile the NFTL and language contained in the instrument stating that, if it were not timely refiled by a specified date, it would operate as a certificate of release under 26 U.S.C. § 6325. Hoops Decl. ¶ 27. But in late 2023, the IRS recorded a revocation of the release which "reinstated" the assessment lien under 26 U.S.C. § 6325(f)(2), followed by a new NFTL, which again prevented the reinstated lien from being "not valid" against interest holders listed in § 6323(a).[4]

### D.  No Other Dispute of Material Fact Exists to Challenge the Liability the Higginses Owe to the United States and the United States Ability to Enforce

The filing of IRS transcripts (included with the Hoops Declaration) creates a prima facie case of tax liability. *See United States v. Hillman,* 60 F. App'x 563, 564 (6th Cir. 2003) ("A certificate of assessments and payments is presumptively correct and establishes prima facie proof of tax liability."). While *Hillman* refers to a certificate of assessments, and the transcripts attached to the Hoops declaration are not certified, they are instead personally attested to by Mr. Hoops. Certification is simply one method of authenticating the document. *See also United*

---

[4] As noted above, the IRS mistakenly recorded a second revocation referencing the November 2023 NFTL but that NFTL's refile deadline was stated as "01-09-2033" and so that NFTL did not qualify as a release in the first place. Accordingly, there was no release to revoke. Even assuming the revocation somehow undermined the November 2023 NFTL, another NFTL was recorded on August 7, 2024, after the revocation.

*States v. Manley*, No. 2:20-cv-02598-TLP-CGC, 2021 U.S. Dist. LEXIS 205084, at *4 (W.D. Tenn. Oct. 25, 2021) ("The United States submitted IRS account transcripts …The Court presumes that the government's assessments are correct."). The transcripts included with the Hoops Declaration are presumptively correct and the burden shifted to the Higginses to challenge the liability. Further, the Higginses reported the assessed amounts on their filed returns and cannot challenge the amounts now. The IRS assessed the amounts the Higginses reported they owed in taxes for tax years 2011, 2016, and 2021. The Higgins did not outright deny any allegations raised in the United States' Amended Crossclaims; they based any asserted disagreements on the letter they submitted as Exhibit A showing the IRS's previous determination that they were "currently not collectible" which represents their prior dealings with the IRS and the IRS's determination at the time to pause administrative collection efforts. The Higginses' disagreements and misplaced basis fail to now substantiate a dispute to the facts determining the judgment owed to the United States.

### i. Any previous pause on administrative collection efforts due to "Uncollectible" status set by the IRS holds no bearing on the current liabilities.

The Higgins's mistakenly asserted a defense that the IRS previously deemed them uncollectible. In their answer, they asserted they do not owe the liabilities (ECF No. 71, PageID.390-391) and that the United States is not entitled to enforce the liens (ECF No. 71, PageID.394) because the IRS deemed them "currently not collectable" and the "case closed" as a result of meetings with the IRS in 2023. However, these determinations did not alleviate the Higginses of their liabilities. The letter they attached as Exhibit A to their answer includes the notice "Although we temporarily closed your case for collections, you still owe the IRS an amount(s)." ECF No. 71-1, PageID.401. The letter also notified them that the liabilities will continue to accrue penalties and interest. *Id.* Clearly, this "currently not collectible" status

functioned only as a temporary pause on collection and not an elimination of their liabilities. Hoops Decl. ¶¶ 21-22. The designation speaks for itself; files marked "currently not collectible" are "currently" but not permanently uncollectible, and the IRS "reserves the right to renew collection efforts" when collection appears possible. *See United States v. Newman*, 2023 WL 7413349, *9, *12 (D.Me. Nov. 9, 2023) (enforcing tax liens against residence through appointment of receiver despite IRS having deemed the taxes "currently not collectible").[5]

Moreover, the IRS may decide not to enforce liens against real property but then change that determination if another creditor brings suit. While the IRS previously deemed the Higginses uncollectible, the initial mortgage foreclosure action by Chase has pushed the United States to seek enforcement of its liens and protect its interests in collecting the tax liabilities owed as a junior lienholder (arguably senior on Lot 203) entitled to proceeds upon sale. The IRS's prior administrative determination to temporarily close the case and pause collection efforts until the taxpayers' financial situation improved does not now hold as a defense to the liabilities nor to the United States' ability to enforce its liens against the Property to collect those liabilities. Moreover, the litigation transferred settlement authority from the IRS to the Department of Justice. *United States v. Jackson*, 511 Fed.Appx. 200 (3d Cir. 2013).

### ii.   The United States timely brought suit within the Statutory Limitations on Time to Collect for Each of the Liabilities.

The United States has a statutorily defined ten years to collect on any tax liability after assessment. 26 U.S.C. §6502. The statute also provides certain events may extend that ten years to collect. However, the Court need not consider such events in its determination of the validity

---

[5] Nor can the Higginses rely on estoppel. *See Kerger v. United States*, 609 F.Supp.3d 562, 577-78 (N.D. Ohio 2022) (IRS abatement of tax to show balance of $0.00 could not form basis for denial of judgment where IRS did not commit affirmative misconduct and taxpayer did not rely to his detriment on the mistake).

and enforceability of the 2016 and 2021 liabilities because his action to enforce undoubtedly falls within the ten years from assessment of the liabilities. No material fact can alter that determination.

The only potentially valid challenge the Higginses made to the United States' allegations in its crossclaims was made with regard to the 2011 liability. *See* ECF No. 71, PageID.392. However, the Higginses fail to substantiate this assertion and their assertion contradicts the history of the liability as attested to in the Hoops Declaration. The 2011 liability was originally assessed on December 10, 2012, over ten years ago; however, the statutory limitation on collection described in 26 U.S.C. § 6502(a)(1) is subject to events which toll the ten years and extend the time to collect to account for time when the IRS could not take collection actions. The Higginses have several tolling events extending the CSED on the 2011 liability. The Hoops Declaration establishes the following facts:

(¶ 10) The Higginses accrued several income tax liabilities prior to 2011 for failure to pay their taxes.

(¶ 11) They entered into an installment agreement on June 1, 2012, for these prior liabilities ("2012 IA").

(¶ 12) The Higginses filed their joint income tax return for tax year 2011 late on October 18, 2012, and the reported 2011 liability then was added to the current 2012 IA by which the Higginses were actively making payments toward their tax liabilities.

(¶ 13) On April 8, 2013, the 2012 IA terminated, adding 30 days on the CSED. 26 U.S.C. §§ 6331(k)(2)(d); 6503(a)(1).

(¶ 14) The Higginses made a timely request for a collection due process ("CDP") hearing on August 1, 2013.

(¶ 16) The CDP hearing resolved on March 6, 2014, thereby adding an additional 217 days of tolling. 26 U.S.C. § 6330(e).

(¶ 17) The result of this hearing was to enter into another installment agreement ("2014 IA"), which was officially recorded as pending on March 21, 2014, and approved and entered into on March 31, 2014, thereby adding at least 10 days of tolling. 26 U.S.C. § 6331(k)(2).

(¶ 18) The 2014 IA terminated on September 15, 2016, adding another 30 days of tolling. 26 U.S.C. § 6331(k)(2).

(¶ 19) Based upon negotiations between IRS and the Higginses, they entered another installment agreement on October 4, 2016 ("2016 IA").

(¶ 20) The 2016 IA terminated on April 9, 2018, following the Higginses' default on installment payments, adding another 30 days of tolling. 26 U.S.C. § 6331(k)(2).

(¶ 21) The Higginses were then deemed "uncollectible" and the IRS refrained from collection actions.

(¶ 22) Changes in the financial situation of the Higginses led to reopening their case.

(¶ 24) The Higginses then entered another installment agreement on July 30, 2021 ("2021 IA").

(¶ 25) The 2021 IA subsequently terminated on August 2, 2023, about the time the IRS again deemed the Higginses "uncollectible" in 2023, thus adding another 30 days of tolling. 26 U.S.C. § 6331(k)(2).

In their Answer to the United States' crossclaim, the Higginses failed to deny these tolling events occurred and thereby admitted. Fed. R. Civ. P. 8(b)(6). They simply answered "they do not believe this action is timely" and questioned the government's calculations: "Our calculations suggest that even with the timing calculation suspensions, 10 years has passed." ECF No. 71, PageID.392. They filed this answer on April 17, 2024, which would have been passed the ten years "even with the timing calculation suspensions." However, the United States initiated the proceeding to collect the 2011 liability on November 9, 2023 (ECF No. 9), within the CSED under 26 U.S.C. § 6502(a) ("such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun…"). The calculations from the tolling events as described above—which the Higginses failed to deny and thereby admitted—extended the CSED from December 10, 2022, to at least November 22, 2023. The United States timely filed the crossclaim for judgment on the 2011 liability on November 9, 2023.

12

### iii.    No dispute exists as to the United States' ability to enforce its liens by way of receiver sale.

Pursuant to 26 U.S.C. § 7403, the United States can enforce its lien by sale of the Property, including by appointing a receiver. The only outstanding issue of material fact remaining in the case is the priority of creditor claims as to Lot 203. This issue, however, simply applies to the distribution of funds which will result from the judicial sale of the Property. Further, the United States and Chase reached an agreement on distribution of the funds and process for pursuing sale of the Property. ECF No. 81-1 ("Settlement Agreement"). With this agreement, the outstanding issue on priority of claims regarding Lot 203 and Chase's claim regarding reformation of its mortgage is moot.[6] This allows the Court to order judgment in favor of the United States on its second claim to enforce its federal tax liens against the property free of concern of determining priority of the claims. The issue between Chase and the United States regarding Lot 203 poses no barrier to further delay pursuit of judicial sale by the United States to enforce its liens.

### E.    The United States is Entitled to Judgment as a Matter of Law

The Higginses owe tax liabilities for tax years 2011, 2016, and 2021, and this action was timely filed within the CSED. The Higginses failed to raise a defense to the validity of the liabilities they voluntarily reported for tax years 2016 and 2021 nor to the enforceability of the liens for those liabilities. Tax liens for the 2016 and 2021 liabilities arose pursuant to 26 U.S.C.

---

[6] The agreement accords priority to the bank for 90% of its claim if the proceeds exceed its mortgage balance and, if the proceeds do not exceed its mortgage balance, then the agreement assures the United States the greater of 10% of the net proceeds or 5% of the tax liabilities. The Higginses have no basis to object because, even assuming they might prevail in preventing Chase from having the mortgage reformed to include Lot 203, Lot 18 is worth at least 90% of the combined lots and the bank will not get more than 90%. In addition, while the United States could arguably preclude reformation from relating back as against its tax liens on Lot 203, the Higginses really have no defense to reformation as to their ownership interest.

§6321 on the dates of assessment and attached to all property owned by the Higginses. Similarly, the Higginses failed to raise a defense to the validity of the amount of the liability for tax year 2011; in fact, they voluntarily reported the tax liability assessed. A tax lien for the 2011 liability arose pursuant to 26 U.S.C. §§6321 and 6322 on the date of assessment and attached to all property owned by the Higginses. The 2011 tax liability is still within its window for collection based upon the initial time of filing the claim in ECF No. 9, and the statutory extensions of time as described in paragraph III.D.ii.

Pursuant to 26 U.S.C. §7403, the United States is entitled to enforce the tax liens for 2011, 2016, and 2021 tax year liabilities through a judicial sale (including by a receiver if requested by the United States), free and clear of all rights, titles, claims, liens, and interests of the parties, including any rights of redemption. Distribution of the proceeds will then be made in accord with determinations of the Court. 26 U.S.C. § 7403(c).

### F.   The United States is Entitled to an Order Allowing it to Nominate a Receiver for Appointment by the Court

The United States often asks courts to appoint local real estate agents as receivers to sell property—residential real estate in particular—when enforcing tax liens, as it results in realizing proceeds equal to full market value less customary closing costs. *E.g.*, *United States v. Morrison*, 2012 WL 9245966, *2 (D.N.H. Jan. 23, 2012) ("The United States may submit a subsequent motion and proposed order setting forth the procedures for the sale(s) of the First Main Street Property and the Second Main Street Property by a licensed real estate agent to be appointed as receiver under 26 U.S.C. § 7403(d) who agrees to act as such for compensation equal to a customary real estate agent's commission."); *United States v. Smith*, 2008 WL 4960430, at *12 (S.D. Ohio Nov. 19, 2008) ("To the extent that sale of the property on the open market may more closely approximate fair market value of the property than a judicial sale by auction . . . the

14

government may wish to consider appointment of a receiver pursuant to § 7403(d)"). In *Wilmington Savings Fund Society FSB v. Cosmano*, 2022 WL 160286 (N.D. Ill. 1922), the court rejected a mortgage holder's argument for a foreclosure sale, favoring tax lien enforcement receiver, where the tax lien was junior to the mortgage. *Id.* at *5. Other cases appointing real estate agents under § 7403(d) include *United States v. Poteet*, 792 F. Supp. 2d 1201, 1208 (D.N.M. 2011); *United States v. Wagster*, 2017 WL 4479730 *1 (E.D. Mich. Oct. 5, 2017); *United States v. Thody*, 2022 WL 2230169 (W.D. Mich. June 9, 2022); *United States v. Kain*, 2017 WL 5176696 (N.D. Ind. October 13, 2017); *United States v. Morgan*, 2021 WL 3421708, *13 (D.Conn. August 5, 2021). Any sale contract entered by the receiver must be approved by the Court before the transaction may close and other parties will have a chance to object if they believe that the price is too low. A local real estate agent will engage in active marketing and has special expertise in selling property in the area. As a result, the sale of the Property by a local real estate broke acting as receiver is likely to yield a higher sale price and larger net proceeds than would an auction sale by the United States Marshal.  As reflected in *Newman, supra*, the Court can first grant this motion by ordering that a receiver will be appointed after which the government will file a motion nominating a receiver. The Settlement Agreement with Chase accords it a right to veto a proposed appointment with good cause and the United States will therefore first solicit Chase's view before nominating a real estate agent.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant the United States' motion for summary judgment and enter a money judgment for the federal income tax liabilities for tax years 2011, 2016, and 2021, and a judgment granting a sale of the Property. More specifically, the United States asks the Court to enter judgment that:

A) The defendants John W. and Martha R. Higgins are indebted to the United States for their income tax liabilities for the tax years 2011, 2016, and 2021, in the total amount of $947,974.37, plus statutory additions and interest accruing from and after August 14, 2024, including interest pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c);

B) The United States has valid and subsisting federal tax liens under 26 U.S.C. §§ 6321 and 6322 securing the liabilities described in paragraph A; and

C) The United States may enforce the federal tax liens securing the liabilities described above pursuant to 26 U.S.C. § 7403 against the Property by having this Court appoint a receiver to market and sell  the entire Property—both Lot 18 and Lot 203—free and clear of all rights, titles, or interests of the parties, including any rights of redemption, subject to further approval by the Court of a purchase/sale agreement, with the proceeds of the sale distributed: first, to pay the costs of sale, including any expenses incurred to secure and maintain the Property; second, in the priority stipulated to for Chase's payments of local property taxes; third, to the United States to pay the liabilities described in paragraph A,; and fourth to the Higginses in the unlikely event there is a surplus; and

D) The United States recover its costs and be awarded such other further relief as the Court determines is just and proper.

Respectfully submitted,

[SIGNATURE BLOCK ON FOLLOWING PAGE]

16

DAVID A. HUBBERT
Deputy Assistant Attorney General
U.S. Department of Justice Tax Division

*/s/ Sarah Stoner*
SARAH STONER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-514-1170 (v) / 202-514-5238 (f)
Sarah.Stoner@usdoj.gov

## Certificate of Compliance

I certify that the length of the *Brief in Support of United States' Motion for Summary Judgment*, including headings, footnotes, citations, and quotations, does not exceed the ten-thousand-eight-hundred-word limit as required under W.D. Mich. LCivR 7.2(b).

The word-count application reads 5,554 words. The word processing software used is Microsoft Word, version 2402.

*/s/ Sarah Stoner*
SARAH STONER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-514-1170 (v) / 202-514-5238 (f)
Sarah.Stoner@usdoj.gov

## Certificate of Conference

In compliance with W.D. Mich. LCivR 7.1(d), I certify that on August 15, 2024, I conferred by phone to ask if the Higginses, pro se litigants, objected to the United States' Motion for Summary Judgment. Further, I certify that on August 15, 2024, I conferred by phone with the following party regarding the same:

Mark J. Magyar
DYKEMA GOSSETT PLLC
Attorney for JPMorgan Chase Bank, N.A.
201 Townsend St., Suite 900
Lansing, MI 49301
616-776-7523
mmagyar@dykema.com

Mr. Magyar, on behalf of Chase, stated he concurs with the motion as against the Higginses but

preserves the position of Chase to remain consistent with its prior pleadings. The Higginses

expressed their objection.

_/s/ Sarah Stoner_____
SARAH STONER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-514-1170 (v) / 202-514-5238 (f)
Sarah.Stoner@usdoj.gov