UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, | Case No. 1:23-cv-01112 |
| Plaintiff, | Hon. District Judge Robert J. Jonker |
| v. | |
| JOHN W. HIGGINS, MARTHA R. HIGGINS; and the UNITED STATES OF AMERICA, | |
| Defendants. | |
| UNITED STATES OF AMERICA, | |
| Counterclaim/Crossclaim Plaintiff, | |
| v. | |
| JOHN W. HIGGINS, MARTHA R. HIGGINS; | |
| Crossclaim Defendants, | |
| And | |
| JPMORGAN CHASE BANK, N.A., | |
| Counterclaim Defendant. | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT**

The United States submits this brief in reply to *Defendant Higginses Response to Brief in Support of United States' Motion for Summary Judgment* and in further support of its motion for summary judgment (ECF No. 83).

1

I. INTRODUCTION

The United States identified three main arguments raised in the Higginses' response to its motion for summary judgment: 1) The IRS previously deemed the Higginses "not collectible;" 2) the write-off of the 2011 tax liabilities was not just a clerical error but rather a forgiveness of liability; and 3) JPMorgan Chase Bank, N.A. ("Chase") is using the United States to enforce its mortgage against Lot 203. In further support of its motion for summary judgment, the United States replies to address each of these arguments and the Higginses' request for right of redemption below.[1]

II. THE HIGGINSES' "NOT COLLECTIBLE" ARGUMENT DOES NOT BAR THE UNITED STATES FROM ENFORCING ITS LIENS FOR FEDERAL TAXES TO SEEK COLLECTION

A determination of "currently not collectible" ("CNC") by the IRS does not eliminate the tax liability nor presents a barrier to the United States later collecting the tax liabilities, even by means of enforcing valid tax liens against any property of the taxpayers. In paragraph III.D.i of its Brief in Support of its Motion for Summary Judgment ("Summary Judgment Brief"), the United States explained the detailed meaning and impact of a CNC determination. The United States maintains this argument and briefly reiterates the same below in this reply.

A designation of CNC merely reflects the IRS's determination to pause collection efforts temporarily. The letter communicating the designation of this status clearly communicates the status is temporary and that the liabilities persist and will continue to accrue penalties and interest. *See* ECF No. 71-1, PageID.401. Nothing within the designation of this status prevents "the IRS from referring a case to the Department of Justice [pursuant 26 U.S.C. § 7401] either to preserve the statute of limitations on collection or if litigation is commenced affecting the tax

---

[1] The Higgenses' response admits that the 2011 liability is correct but for their forgiveness claim and also admit that a receiver sale is available if the Court rejects their forgiveness defense.

2

lien on property." ECF No. 84-1, PageID.474 ("Hoops Declaration"). Liabilities marked CNC are "currently" but not permanently uncollectible, and the IRS "reserves the right to renew collection efforts" when collection appears possible. *See United States v. Newman*, 2023 WL 7413349, *9, *12 (D.Me. Nov. 9, 2023) (enforcing tax liens against residence through appointment of receiver despite IRS having deemed the taxes "currently not collectible"). The United States, authorized by the Secretary pursuant 26 U.S.C § 7402, rightfully now seeks collection by reducing the liabilities for tax years 2011, 2016, and 2021 to judgment and enforcing its liens for the same against the property at issue.

### III. THE IRS IS WITHIN ITS POWER TO CORRECT ERRORS THAT RESULT IN INCORRECTLY MARKING A LIABILITY AS WRITTEN-OFF

The Higginses' asserting "forgiveness of [their] 2011 taxes" mischaracterizes the status of the liability. The liability for tax year 2011, after issued notice and failure to pay, was assessed on December 10, 2012. The statutory limit to collect on assessed liabilities is ten years, 26 U.S.C. § 6502; however, tolling events can extend the time to collect, referred to in IRS parlance as the collection statute expiration date or CSED. *Id.* Because of the installment agreements and a collection due process hearing, as described in detail in paragraph III.D.ii of the United States' Summary Judgment Brief, the CSED was extended to at least November 22, 2023. *See* ECF No. 84, PageID.462-463. The Higginses' response does not dispute this. The United States initiated the proceeding to collect in this action on November 9, 2023.

As the United States explained in detail in its Summary Judgment Brief, a freeze code was not entered to reflect the filing of the crossclaims that extend the CSED under 26 U.S.C. § 6502. Without a freeze code, the system automatically recorded a write-off of the balance due on the mistaken premise that the time to collect had passed. Hoops Decl. ¶ 28. Although legally irrelevant, the Higginses had reason to know that the 2011 liabilities persisted in light of the

3

letter declaring the Higginses as CNC that the Higginses filed with their Answer (ECF No. 71-1) and the United States' crossclaims filed in this case. Under 26 U.S.C. § 6502, the United States timely initiated collection when it filed the crossclaims for judgment and lien enforcement on the 2011 liability on November 9, 2023. An error reflected on the transcript (ultimately corrected to show the persisting liability) does not negate the timely collection action initiated by the United States.

The Higginses argument that the write-off of the 2011 tax liabilities was not just a clerical error but rather a forgiveness of liability has no evidentiary support and in any event was not within the IRS's authority.  Assuming arguendo someone in the IRS actually made an affirmative decision to "forgive" the debt that decision is void an unenforceable.  *United States v. Jackson*, 511 Fed.Appx. 200 (3d Cir. 2013).

IV. **CHASE'S CLAIM TO LOT 203 DOES NOT IMPACT REQUESTED RELIEF FOR THE UNITED STATES AS APPLIED TO HIGGINSES AND IS MOOTED BY THE FILED AGREEMENT**

The Higginses assert the United States is enforcing its liens for federal tax liabilities only because Chase brought a claim to foreclose its mortgage against the property at issue (including both Lot 18 and Lot 203) and reform the mortgage to cover Lot 203. This argument holds no legal weight. The United States holds an interest in the property through its federal tax liens for the tax liabilities for years 2011, 2016, and 2021. The United States could seek enforcement of these tax liens regardless of whether another party was seeking a judicial sale of the property. *See* 26 U.S.C. § 7403.

To be sure, if the Higginses had remained current on the mortgage such that it would gradually be paid off, the government *might* not have sought lien-enforcement when it did, but it is wrong to assume it would not then have sued for judgment simply to extend the CSED and

4

preserve its liens against the valuable property.[2]  Furthermore, the United States has a right to protect its interest in valuable property subject to a tax lien where the taxpayer defaults in making payments required on a senior encumbrance.  The Court already issued a judgment finding "[t]he Higginses are indisputably in default on their Mortgage; the Mortgage indisputably covers at least Lot 18; and the United States' interest in Lot 18 is indisputably junior to that of Chase." ECF No. 74, PageID.418. The Higginses do not appear to have the means to otherwise cure their default and service the mortgage debt.[3] In view of the default, the United States needs to protect its interests.

Further, the United States and Chase reached an agreement on the issue of priority regarding Lot 203, which moots Chase's claim regarding reformation of the mortgage. *See* ECF No. 81-1. Any assertion the Higginses make regarding Chase "trying to use the United States" lacks any legal basis or weight regarding the Higginses' response to the United States' motion for summary judgment.[4] The United States asserts legal basis for the validity and persistence of the liability and lien for tax year 2011 and no challenge exists regarding the liens for the 2016 and 2021 liabilities. The United States may enforce its liens against Lot 18 and Lot 203 of the

---

[2] Although legally irrelevant, the Higginses are ill-informed in assuming that but for Chase's complaint, the limitations period would have been allowed to expire.  It is standard IRS procedure to refer a suit to the Department of Justice as the collection statute expiration date is approaching at least to obtain a money judgment under 26 U.S.C. § 6502 to preserve a lien when a taxpayer has real property with value substantially greater than senior liens, even if the taxpayer is in CNC status.

[3] What the Higginses are suggesting is that they be permitted to keep a home worth over $2 million without paying a $1.14 million mortgage that they have no ability to service, while also not having to pay about $900,000 in tax liens against the home.   Interest alone on the tax liabilities is currently over $70,000 per year and thus more than combined social security income of the Higginses (which combined is between $60,000 and $65,000).

[4] Although irrelevant to the enforceability of the tax liens, the United States does believe that *as against the Higgins* (in contrast to the United States), Chase would prevail in its request for reformation when 90% of the home is on the parcel described in the mortgage (Lot 18).

5

property at issue by a judicial sale (including appointment of receiver if requested by the United States) as permitted under 26 U.S.C. § 7403.

### V.     THE HIGGINSES' REQUEST RIGHT OF REDEMPTION

While the Higginses request a right of redemption in their response brief, the United States asserts in its motion for summary judgment and reiterates here, that enforcement of its liens through judicial sale pursuant to 26 U.S.C. § 7403 results in a sale free and clear of all rights, titles, claims, liens, and interests of the parties, including any rights of redemption.  *See United States v. Williams*, 796 F.3d 815, 817 (7th Cir. 2015); *United States v. Coleman*, 2018 WL 1005313, *2 (E.D.N.Y. Jan. 26, 2018); *United States v. Scherer*, 2023 WL 4539704 *10 (July 11, 2023).  Moreover, a sale by a real estate agent acting as a receiver offers more assurance of a sale at full market price to pay the federal tax liens and the mortgage debt than a fire-sale-price at an auction after which a buyer must wait for months to find out if they may take possession.

### VI.     CONCLUSION

The United States maintains its arguments for its motion for summary judgment and, along with the additional support provided in this reply brief, reiterates its motion for the Court to grant summary judgment and enter a money judgment for the federal income tax liabilities for tax years 2011, 2016, and 2021, and a judgment granting a sale of the property at issue (including by appointment of a receiver if requested by the United States).

    Respectfully submitted,

    DAVID A. HUBBERT
    Deputy Assistant Attorney General
    U.S. Department of Justice Tax Division

*/s/ Sarah Stoner*
SARAH STONER
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C.  20044
202-514-1170 (v) / 202-514-5238 (f)
Sarah.Stoner@usdoj.gov

**Certificate of Compliance**

I certify that the length of the *United States' Reply in Support of its Motion for Summary Judgment*, including headings, footnotes, citations, and quotations, does not exceed the four-thousand-three-hundred-word limit as required under W.D. Mich. LCivR 7.2(c).

The word-count application reads 1,708 words. The word processing software used is Microsoft Word, version 2402.

*/s/ Sarah Stoner*
SARAH STONER
Trial Attorney, Tax Division
U.S. Department of Justice
