UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, N.A.,

    Plaintiff and Counter-Defendant

v.

JOHN W. HIGGINS AND MARTHA R. HIGGINS,

    Defendants and Cross-Defendants; and

THE UNITED STATES OF AMERICA,

    Defendant, Counter-Claimant,
    and Cross-Claimant.

Case No. 1:23-cv-1112

Hon. Robert J. Jonker

_____/

**ORDER**

**I.    INTRODUCTION**

The factual record in this case is dense and includes mistakes on both the real estate and tax side of the ledger, but the bottom line is inescapably clear: the Higgins owe the United States about $1 million in unpaid taxes secured by tax liens on their home and owe JP Morgan Chase about $ 1 million on a defaulted mortgage secured by the same home.  Because the home sits on two separately numbered parcels, only one of which was included in the original mortgage papers filed before the first recorded tax lien, there is a priority dispute between the United States and Chase.  But that dispute is legally immaterial as far as the Higgins are concerned because their interest is subordinate to both the mortgage and the tax liens.  Moreover, the creditors have resolved their priority dispute by settlement, and both support the pending Motion of the United States for summary judgment enforcing the tax liens by sale of the Higgins' property.  The Higgins

oppose the motion but have not established any triable issue of fact on the claims of the United States, and the United States is entitled to the summary judgment it seeks.

## II. FACTS

John and Mary Higgins own a home in Berrien County, Michigan. The home sits on two separately numbered lots (Lot 18 and Lot 203) under the common street address of 50102 Alpine Road. The original mortgage papers expressly reference only Lot 18, however. The Higgins mortgage went into default and Chase sued to reform the mortgage papers to include all of the property—including both Lot 18 and Lot 203—that is part of the common street address for the home, and to foreclose its interest in the mortgage. Chase claims in its Second Amended Counterclaim that the principal balance owed as of May 18, 2022, was about $1.14 million. (ECF No. 33, at PageID.186).

After Chase filed suit and recorded *lis pendens* regarding the property, the United States filed tax liens for a number of tax years. The United States seeks in this action to enforce only three of them, covering tax years 2011, 2016, and 2021. As of February 26, 2024, the United States asserts that the combined value of the tax liens was about $913,000. (ECF No. 52, at PageID.313). The United States seeks summary judgment establishing the specific amounts owed for each of the these tax years; holding the Higgins responsible for the full amount of taxes owed, plus interest and penalties; and authorizing a tax foreclosure sale, without the right of redemption, under 26 U.S.C. § 7403. (ECF Nos. 83, 84).

Chase and the United States resolved their priority dispute with a Settlement Agreement. (ECF No. 81). That Agreement anticipates a tax foreclosure sale by an appointed receiver under Section 7403 and allocates the net proceeds of sale between the United States and Chase, with any remaining balance payable to the Higgins. In light of that Agreement, Chase

supports the motion of the United States. (ECF No. 90). The Higgins admit that they owe at least some unpaid taxes secured by the tax liens, but they specifically challenge the validity of the 2011 tax lien and generally oppose the motion of the United States on a series of equitable considerations. In the Court's view, the Higgins have not established a triable issue of fact on any material issue, and the United States is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

### III.     ANALYSIS

The Higgins do not contest the fundamental point that they owe back taxes. (ECF No. 86, PageID.491). Nor do they quarrel with the specific amounts specified by the United States and supported by Declaration for the tax years 2011, 2016 and 2021. (*Id.*) They assert essentially three bases for their opposition. *First*, they say the United States declared the taxes uncollectible along the way and that the declaration should remain binding because the Higgins financial position has not improved. *Second*, they say that the United States forgave the 2011 tax bill or at least lost the opportunity to enforce it. *Finally*, they say that if there is going to be a tax sale, they should at least have the right of redemption.

As to the first point, it is certainly true that the United States treated the Higgins' tax liability as uncollectible for a time. That is not, however, of any moment. A declaration of uncollectability is a temporary one made on the facts at any given time, and it expressly is NOT a determination that the underlying tax liability is forgiven or otherwise unenforceable. The letter to the Higgins expressly says this. (ECF No. 71-1, PageID.401). The letter describes the decision as temporary and informs the Higgins that "you still owe the IRS," and that the IRS "may re-open your case in the future if your financial situation improves." (*Id.*) Penalties and interest continue to accrue, according to the letter. The United States further bolsters the plain language of the letter

with a Declaration from Revenue Officer Advisor Hoops making the same points. (ECF No. 84-1, PageID.474).

The Higgins further protest that even if the decision was a temporary one, their actual financial condition has not improved. Rather, what happened, according to the Higgins, is that their mortgage lender discovered the potential problem with the property description in the mortgage papers and effectively revived the interest of the IRS in pursuing collection. It may well be that the IRS re-assessed collectability considerations based more on an improved position regarding a competing creditor, rather than an overall improvement in the Higgins' earnings or overall net worth. But practical considerations like that are perfectly legitimate in assessing the financial resources a taxpayer has available to pay a tax debt to the United States. Collectability depends on not only the earnings and assets of the taxpayer, but also on what other parties have higher priority claims to any available earnings and assets. As those factors change, so does the collectability analysis.

As to the Higgins' claim that the United States forgave the 2011 tax debt owed, there is no triable issue of fact. It is true that the IRS made an internal clerical error writing off the 2011 tax liability, but there is no evidence to support the claim that there was actually a lawful and enforceable forgiveness of the liability. To the contrary, once the IRS Revenue Advisor discovered the mistake he corrected it, as described in the Hoops Declaration. (ECF No. 84-1, PageID.475). There is nothing of record that establishes any formal forgiveness of the tax debt. Moreover, to the extent the Higgins are trying to rely on a statute of limitations defense as to the 2011 tax debt, rather than a formal forgiveness, the record demonstrates that the United States filed this action to enforce the 2011 tax debt (as well as the 2016 and 2021 tax debts) within the required ten-year period, considering applicable tolling periods. (ECF No. 84, PageID.462–

63 (summarizing admitted allegations in the pleadings); ECF No. 84-1, PageID.474–75 (Declaration of Revenue Advisor)).[1] The administrative file history is certainly not a model of clerical precision but as supported by the Hoops Declaration, the record does demonstrate the November 9, 2023 crossclaim filed in this action properly tolled the limitations period while it was still open, even though a clerical error initially failed record this fact on the internal records of the IRS. (ECF No. 84-1, PageID.474–75).

Finally, the Higgins say that even if there is going to be a tax foreclosure sale in the case, they should be entitled to a right of redemption because that is the period that would have applied under state law if Chase were selling the property as part of a mortgage foreclosure. The problem for the Higgins, though, is that the sale here would not be a mortgage foreclosure by a private lender but a tax foreclosure by the United States under 26 U.S.C. § 7403. Tax foreclosure sales like this are free and clear of all liens, encumbrances and other interests, including any rights of redemption. The government has detailed the authority on this issue. (ECF No. 91, PageID.512); *see also United States v. Moyer*, No. C 07-00510 SBA, 2008 WL 3478063 (N.D. Cal. Aug. 12, 2008). The Court is unaware of any exception to this rule just because the United States has agreed to share some of the sale proceeds with a private creditor to resolve a priority dispute, and the Higgins have not identified any authority to support such an exception.

### IV. CONCLUSION

It is easy to understand why it is difficult for the Higgins to face losing a home they have lived in for many years, and why they want to forestall that as long as possible. But it is also easy

---

[1] The IRS recorded tax liens covering tax years 2008, 2009 and 2010, in addition to the 2011, 2016 and 2021 tax liens at issue in the pending summary judgment motion. The United States recognizes that the earlier tax liens are no longer enforceable because of lapse of time, and so it is not seeking to recover them here.

to see on this record that this is the result compelled by law and that the Higgins have actually had a long time to come to grips with that reality and plan for it. If you don't pay your taxes or your mortgage, eventually you are going to lose your home and any other assets securing the unpaid obligations. The Higgins haven't paid their mortgage or their taxes for many years, and now owe over $2 million on those combined obligations, over and above the additional unpaid tax debts that are no longer collectable for lapse of time. It may well be difficult, but it is neither unfair nor inequitable, for the Higgins to lose their $2 million home to satisfy those obligations now.

Accordingly, the Court **GRANTS** the motion of the United States for Summary Judgment. The United States and Chase shall submit a proposed Final Judgment for entry not later than **October 28, 2024**.

**IT IS SO ORDERED.**

Dated: October 15, 2024         /s/ Robert J. Jonker
                                ROBERT J. JONKER
                                UNITED STATES DISTRICT JUDGE