UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, N.A.,

    Plaintiff and Counter-Defendant

v.

JOHN W. HIGGINS AND MARTHA R. HIGGINS,

    Defendants and Cross-Defendants; and

THE UNITED STATES OF AMERICA,

    Defendant, Counter-Claimant,
    and Cross-Claimant.

_____/

Case No. 1:23-cv-1112

Hon. Robert J. Jonker

**ORDER**

The United States has moved to appoint Kerry Wright, of Wright Properties, as receiver to enforce the United States' tax liens by taking possession of and arranging for the sale of the real property located at 50102 Alpine Boulevard, New Buffalo, Michigan 49117 (the "Property"). (ECF No. 96).  In their March 26, 2025 response to the motion, the Higgins stated that they "have no response to the United State motion to appoint receiver." (ECF No. 99).  The Property includes two parcels: "Lot 18" and "Lot 203."  The legal description of the Lot 18 parcel is as follows:

> Lot 18, Alpine Valley, being a subdivision in part of the fractional Northwest quarter of fractional Section 17, and the fractional East half of Section 18, Township 8 South, Range 21 West, village of Grand Breach, Berrien County, Michigan, according to the Plat thereof recorded June 4, 1979 in Book 23 of Plats, Page 27.

Meaning to describe the property conveyed by North Beach Company, Inc. to John W. Higgins and Martha R. Higgins, as tenants by the entirety, by indenture recorded at book 1215, page 416 in the records of Berrien County, Michigan on September 26, 1984, as instrument 1984014231.

The legal description of the Lot 203 parcel is as follows:

> Lot 203, New Park Addition to Grand Beach Springs, Sections 17 and 19, Township 8 South, Range 21 West, Village of Grand Breach, Berrien County, Michigan, according to the Plat thereof recorded March 10, 1923 in Book 6 of Plats, Page 48.

Meaning to describe the property conveyed by F.G. Connelly Mechanical Contractors, Inc. to John W. Higgins and Martha R. Higgins, as tenants by the entirety, by corporate warranty deed dated October 5, 2002, and recorded at book 2300, page 390 in the records of Berrien County, Michigan on October 14, 2002, as instrument 2002041222.

Having considered the grounds stated in the motion, and under 26 U.S.C. § 7403(d) and in accordance with the Final Judgment entered on October 29, 2024, (ECF No. 95), it is hereby **ORDERED** that Kerry Wright, with Wright Properties ("Receiver") is appointed Receiver of the Property, and he is directed to take custody of the Property, market it for sale, and enter a contract for sale subject to this Court's further approval in accordance with this Order. The sale of the Property shall be subject to the terms and conditions set forth below.

1. **Sale of Clear Title.** The sale of the Property shall be free and clear of all rights, titles, claims, liens, redemption rights, and interests of all parties to this action or their successors and assigns. Any rights, titles, claims, liens, and interests of all parties to this action shall attach to the proceeds of sale to the same extent and in the same order of priority as they did against the Property.

2. **Sale Subject to Building Lines, Laws, Ordinances, Regulations, and Items of Record.** The sale shall be subject to building lines, if established, all laws, ordinances, and governmental regulations (including building and zoning ordinances) affecting the Property, and easements, restrictions, and reservations of record, if any.

3. **"As is" Sale.**  The Property shall be offered for sale "as is," with all faults and without any warranties either express or implied, and the sale shall be made without any right of redemption.

4. **Occupants Shall Vacate the Property.**  Except by other agreement with the Receiver and approved by the United States as provided in the next section, all persons occupying the Property shall vacate the Property permanently within 30 days after the entry of this order.  All persons shall take with them their personal property and trash, waste and debris (but leaving all improvements, buildings, fixtures, and appurtenances to the Property, which includes, among other things, cabinets, plumbing pipes, plumbing or electrical fixtures, major appliances, such as a washing machine, clothes dryer, refrigerator, stove, dishwasher, and HVAC system), and they shall not damage the Property or leave it in disorderly condition.  Any other personal property remaining on the Property after the date by which all persons occupying the Property are required to vacate the Property is deemed forfeited and abandoned, and the Receiver is authorized to dispose of it in any manner he sees fit, including sale, in which case the proceeds of that sale are to be applied first to the costs and expenses of sale and the balance shall be paid into the Court for further distribution.  If any person fails or refuses to vacate the Property by the date required by this Order, the Receiver shall notify counsel for the United States, and counsel for the United States shall request that the United States Marshals Service take all actions that are reasonably necessary to eject those persons from the Property.  In that event, the United States Marshals Service is authorized and directed to take any and all necessary lawful actions, including but not limited to the use of reasonable force, to enter and remain on the premises, which includes, but is not limited to, the land, the buildings, vehicles and any structures located thereon, for the purpose of executing this Order.

The United States Marshals Service is further authorized and directed (a) to arrest and/or or evict from the premises any and all persons who obstruct, attempt to obstruct, or interfere in any way with the Receiver's efforts to comply with his obligations under this Order, including but not limited to, by refusing to grant access to the Receiver, and (b) to prevent any person from causing damage to, or committing waste against, the Property at any time prior to entry of an order approving a sale and a closing of the sale.  If the United States discovers that damage to, or waste against, the Property is being committed, the United States Marshals Service is authorized to intervene in any lawful way they deem necessary to stop the damage or waste, including by coordinating and working with other federal, state, or local law enforcement agencies.  No further order of the Court is required for the United States Marshals Service to take the above-authorized action(s) if requested by counsel for the United States.

5. **Extension of Occupancy.**  The Receiver with the approval of the United States may, in their sole discretion, enter into an agreement extending time in which John and Martha Higgins (the "Higginses") must vacate property, which may include the payment of such rent as the Receiver and the United States determine is appropriate and which may address such things as property taxes and insurance; provided, however, that any such agreement must include the agreement of the Higginses to vacate the property within 30 days of the execution of a purchase and sale agreement and provided further that the Receiver shall have the unwaivable right and discretion (after consultation with the United States) to terminate any additional occupancy period if he determines that the extended occupancy is interfering the marketing of the property for sale, whereupon the property shall be vacated by all occupants within 30 days of notice to the Higginses of such termination.  Additionally, while the Higginses are occupying the property, they must agree to enable the Receiver to show the interior of the property to any

interested person during daylight hours on one hour's notice and temporarily leave the premises during the showing unless the Receiver advises them that is not necessary. Further, the Receiver shall be entitled to arrange for an "open house" advertised to any persons wishing to view the interior with at least seven days advance notice during which the Higginses must leave the property (not less than two weeks after any previous open house).

6. **Key/Code Turnover.** The Higginses and/or any occupant of the Property shall provide the Receiver with all keys and access codes (electronic or otherwise) for all parts of the Property on or before 30 days after the entry of this Order. Should anyone required by this paragraph to provide all keys and access codes to the Receiver fail to do so within the time permitted, the Receiver is authorized to change the locks on the Property after it is vacated by any current occupants and will be reimbursed for his reasonable expenses in changing the locks in accordance with paragraph 9. The Receiver is also authorized to change the locks even if keys and access codes are provided if he, in his discretion, believes that is necessary to assure the securing of the Property.

7. **Compensation for the Receiver.** The Receiver shall be compensated from the proceeds of the sale of the Property in an amount equal to five percent (5%) of the gross sale proceeds. The Receiver must pay any buyer broker commission for the sale from his compensation of five percent (5%) of the gross sale proceeds. The Receiver and any buyer broker shall receive payment of the above-described compensation from a distribution from the gross proceeds of a sale approved by the Court at closing, as a direct cost of sale, and before any net sale proceeds are used to pay the claims of the parties to this action.

8. **Rights, Powers, and Authority of the Receiver.** The Receiver shall have all of the rights and powers necessary to fulfill his obligations under the Order, specifically including, but not

necessarily limited to, the power to enter the Property, to inspect the Property, to secure and preserve the Property and its salability, to list and advertise the sale of the Property, and to show it to prospective buyers.

- a. **Expenditures by the Receiver.** The Receiver may, but is not required to, make from his funds or his firm's funds payment of real property taxes, water, sewer, and other utility charges or fees for the Property.  Subject to prior written approval by the United States, the Receiver may make from his funds or his firm's funds payment for reasonable and necessary repairs, maintenance, and improvements (*e.g.*, repainting), and to take any action reasonably necessary to protect and preserve the value of the Property prior and up to the closing of its sale and/or to make it more salable. The Receiver may, but is not required to, make from his funds or his firm's funds payment for property and liability insurance for the Property (except that any agreement to extend occupancy for the Higginses shall require them to maintain hazard insurance at their expense).  Subject to prior written approval of the expenditures by the United States, the Receiver shall have the power and authority to select contractors and allow them to enter the Property to perform work in, at, or on the Property.  No expense greater than $15,000 shall be incurred without giving Chase notice and a chance to object and bring any dispute before this Court.

- b. **Listing Price.** The Receiver shall determine the initial listing price for the Property subject to approval by the United States.  Before the Property is listed for sale, the United States shall provide notice of the proposed initial listing price to plaintiff JPMorgan Chase Bank, N.A. ("Chase") and the Higginses, who shall have five days

to file a motion to seek review of the proposed initial listing price by the Court. If lack of buyer interest or buyer feedback indicates that the initial listing price for the Property is too high, the Receiver, subject to approval by the United States, may select a lower listing price. Before the listing price for the Property is changed, the United States shall provide notice of the proposed revised listing price to Chase and the Higginses, who shall have five days to file a motion to seek review of the proposed revised listing price by the Court, except that if at any time the Property has been on the market for 30 days without any interested persons making an offer equal to at least 90% of the current listing price, the listing price may be lowered by up to 10% from the previous listing price at the discretion of the Receiver without Court approval or an advance opportunity to object.

c. **Earnest Money Deposit.** An earnest money deposit shall be required as part of a purchase agreement. The Receiver shall determine the amount of the earnest money deposit subject to approval by the United States, but not less than 2.5% of the purchase price. The earnest money deposit from a buyer shall be held by the Receiver or a title company approved by the Receiver. If held by the Receiver, the Receiver shall provide the deposit at or shortly before the closing for the sale to the title company or attorney serving as the escrow and distribution agent and conducting the closing for the sale. If the purchaser fails to perform under the terms of the agreement, the purchase agreement shall be deemed null and void, and the deposit shall be forfeited. Any forfeited earnest money deposit shall be used first to pay the cost, if any, of document preparation for the transaction that did not close, and any amount remaining shall be held in escrow to be distributed with the

proceeds from sale of the Property, unless the United States agrees to have the Receiver use part of it to make repairs or pay property taxes or for insurance.  If a purchaser fails to perform under the terms of a purchase agreement, the Receiver shall relist the Property under the terms and conditions of the order.  Any purchaser whose earnest money deposit is subject to forfeiture may file a motion in this case to assert any claim that the forfeiture is not consistent with the purchase and sale agreement.  Any person possessing any earnest money deposit may interplead the same by motion in this case and otherwise shall not distribute the same to any party to the purchase agreement unless upon the permission of the other party or upon the further order of this Court.

d. **Purchase Agreement Generally.**  The terms of any purchase agreement shall require an earnest money deposit, payable by cash, certified check, or cashier's check.  The purchase agreement further shall require that the balance of the purchase price is to be paid at closing by cash, certified check, or cashier's check.  A purchase agreement may include other customary and reasonable terms in the discretion of the United States, in consultation with the Receiver.

e. **Negotiation of a Purchase Agreement and its Submission to the Court for Approval.**  The Receiver shall negotiate the sale of the Property.  He may make a counteroffer, subject to approval by the United States.  He may agree to a purchase price and enter into a purchase agreement subject to approval by the United States and Chase and subject thereafter to approval by the Court.  The Receiver may rely in his capacity as Receiver on legal advice provided by counsel for the United States in connection with the terms of a purchase agreement and drafting of a proposed

Receiver's deed, although said counsel does not represent the Receiver individually.  The Receiver is not expected to need separate counsel but may request the Court for authority to retain separate counsel if the Receiver believes that to be necessitated by unforeseen events, except that no approval is required for the retention of a closing attorney as provided in the next paragraph.  When the Receiver obtains a purchase agreement for the Property that the United States has approved, the United States shall file a motion with the Court for approval of the sale on the terms of the agreement.  Chase and the Higginses shall have the right to file an objection to the motion to argue that the price is insufficient or for other reasons related to the terms of the agreement.

    f.    **Closing for Sale.**  If the Court enters an order approving the purchase agreement, the Receiver shall arrange a closing with the buyer and the title company, or an attorney that the Receiver has approved for a customary fee if applicable law requires an attorney to conduct real property sale closings, to conduct the closing and serve as escrow and distribution agent for the sale.  After the Court approves a purchase agreement, the Receiver shall provide the title company or the attorney conducting the closing with a Receiver's Deed to the Property, which may be used to convey title to the Property to the buyer(s) at the closing for the sale.

9.  **Priority of Reimbursement of the Receiver for Expenses He or His Firm Pays for Maintenance, Repair, Renovation, and to Otherwise Protect and Preserve the Property and its Salability.**  To the extent that the Receiver, with the prior written approval of the United States, expends any funds of his own or of his firm to preserve and maintain the Property or improve its salability, in accordance with the Final Judgment (ECF No. 95), such

expenditures may be considered as "costs and expenses of sale" and the Receiver shall be entitled to recover the same at the closing of a sale of the Property from the gross proceeds of the sale with priority over the claims of all parties, except any claims for real property taxes and water and sewer fees for the Property.  The Receiver must provide counsel for the United States with receipts or copies of cancelled checks proving the amounts that he paid for such expenses.

10. **Disbursements at the Closing Table.**  At the closing, the title company or attorney conducting the closing shall disburse from the gross sale proceeds the funds necessary to pay any outstanding real property taxes, water, sewer, and other utility fees, the seller's share of fees and costs reasonable and necessary for the closing, commissions for the Receiver and any to be shared with a buyer's realtor, agent or broker, reimbursement of expenses paid by the Receiver or his firm for repair, maintenance, and/or renovation of the Property and/or for real property insurance or similar or related expenses that the Receiver is authorized to make with respect to the Property.

11. **Escrow and Distribution Agent.**  In addition to conducting the closing, the title company or attorney approved by the Receiver shall hold in escrow the net proceeds remaining after the payment at the closing of the direct costs of the sale of the Property, pending the entry of an order of distribution by the Court or alternatively pending the entry of an order to deposit the funds in the registry of the Court.  Upon receipt of an order of distribution entered by the Court, the title company or attorney that conducted the closing shall distribute the net proceeds promptly and in accordance with the order.  Should the United States conclude that any fee to be charged for escrowing the proceeds pending a distribution order is not reasonable, it may

seek a modification of this order to direct the net proceeds at closing to be paid directly to the Clerk of this Court for deposit into the Court's registry.

12. **Motion for Distribution of Net Proceeds of Sale.** After the closing, the United States shall file a motion for distribution of the net proceeds of sale. The motion shall follow the adjudged distribution of sale proceeds as set in the Final Judgment (ECF No. 95) and specify the persons or entities that are to receive the remaining proceeds of sale and the respective amount each of them is to receive. Chase and the Higginses shall have the right to object to such motion to the extent such objection does not conflict with the Final Judgment (ECF No. 95).

13. **Parties Shall Not Record Documents Against the Property.** The parties shall not record or cause or prompt any other person to record any instruments, publish any notice, or take any other action (such as running newspaper advertisements, posting signs, or making internet or social media postings) that may directly or indirectly tend to adversely affect the value of the Property or that may tend to deter or discourage potential purchasers from purchasing the Property, nor shall they permit anyone else to do so.

14. **The Higginses Shall Not Interfere with the Receiver's Efforts to Sell the Property.** The Higginses and all other persons acting in concert with them, or on their behalf, are prohibited from interfering with the Property, the Receiver, and the Receiver's efforts to comply with his duties and obligations under this Order.

15. **Cooperation Required.** All parties and other persons acting in concert with them or on their behalf, including any persons using or occupying the Property with the permission of John or Martha Higgins, shall cooperate with the Receiver in his efforts to fulfill his duties and obligations under this order. During the period provided for by paragraph 4, any occupants of the Property shall cooperate and work with the Receiver to provide the Receiver with access

to the Property and not to interfere with the Receiver's efforts to preserve and protect it. The Receiver shall bring with him on any visits to the Property from time-to-time multiple copies of this order and shall deliver the same to anyone found to be occupying the Property whom he has not already served in hand, and shall orally inform such occupant(s) that they are subject to the terms of this order.

**IT IS SO ORDERED.**


Dated: April 1, 2025               /s/ Robert J. Jonker
                                   ROBERT J. JONKER
                                   UNITED STATES DISTRICT JUDGE