

# PURCHASE AGREEMENT

For reference purposes only, the Offer Date is __August 18, 2025__ .   MLS# __25020694__

| Listing REALTOR® | Kerry M Wright | Phone # | (269)369-4640 |
| --- | --- | --- | --- |
| REALTOR® Email Address | kerry@thewrightbroker.com | License # | 6506043362 |
| Listing Brokerage Firm | Wright Properties   Phone # (269)369-4640 | License # | 6505357622 |

"Delivery" or "Receipt" of any requirements under this Agreement shall be complete upon any of the following methods: 1) personal service; 2) regular first-class mail, or registered mail (return receipt); or 3) electronic transmission to Seller, Buyer, or their Agent.

**1. EFFECTIVE DATE**: This Agreement is effective on the date of Seller's acceptance of Buyer's offer or Buyer's acceptance of any counteroffer, as the case may be, and this date shall hereafter be referred to as the "Effective Date". If a federal holiday occurs during a time period specified in the Agreement, or if a deadline falls on a federal holiday, the time period or deadline is automatically extended until 5:00 p.m. on the next business day. Further, any reference to "days" in this Agreement refers to business days, unless stated otherwise. The first business day begins at 8:00 a.m. on the day after the Effective Date. Any reference to "time" refers to Eastern Standard Time.

**2. AGENCY DISCLOSURE**: The undersigned Buyer and Seller each acknowledge that they have read and signed the *Disclosure Regarding Real Estate Agency Relationships*. The selling licensee is acting as (*choose one*): ☐ Agent/Subagent of Seller ☒ Buyer's Agent ☐ Transaction Coordinator ☐ Dual Agent (with written, informed consent of both Buyer and Seller)

| Selling REALTOR® | Elizabeth Roch | Phone # | (312)636-8751 |
| --- | --- | --- | --- |
| REALTOR® Email Address | lizroch1@gmail.com | License # | 6506045544 |
| Selling Brokerage Firm | At World Properties Michigan LLC   Phone # (312)636-8751 | License # | 6505375260 |

**3. PURCHASE PRICE**: Buyer offers to buy the Property for the sum of $ __1,500,000.00__ ; _____
__One Million, Five Hundred Thousand and Zero__ U.S. Dollars.

**4. PROPERTY DESCRIPTION**: Buyer offers to buy the Property located in the ☐ City ☒ Village ☐ Township of __Grand Beach Vllg__, County of __Berrien__ Michigan,
commonly known as Mailing address:
__50102 Alpine Boulevard__   __New Buffalo__   __MI__   __49117__
House Number   Street Name   City   State   Zip Code
Parcel ID number(s): __11-39-0500-0018-01-4__
Legal Description: __LOT 18 ALPINE VALLEY ALSO LOT 203 NEW PARK ADD TO GRAND BEACH SPRINGS__

_____ (the Property).

☒ This property is platted and is not being divided.

☐ This property is unplatted and is not a new division under the Land Division Act and the Seller owns no other contiguous, unplatted land unless otherwise disclosed in writing. Seller is transferring to Buyer all available divisions, if any, under Section 108 of the Land Division Act of 1967, but makes no representations as to the number. Buyer has not relied on any information or opinions of the Broker(s), Salesperson(s) or Seller(s) on this matter.

☐ This property is unplatted and is a new division under the Land Division Act and this agreement is subject to the attached Land Division Addendum.

**5. FIXTURES & IMPROVEMENTS**: The following is not intended to be an all-inclusive list of items included with the Property. All improvements and appurtenances are included in the Purchase Price, if now in or on the Property, unless rented, (*see instructions below for rented items*) including the following: all buildings; landscaping; attached smart home devices; attached security systems; lighting fixtures and their shades and bulbs; ceiling fans; hardware for draperies and curtains; window shades and blinds; built-in kitchen appliances, including garbage disposal and drop-in ranges; wall to wall carpeting, if attached; all attached mirrors; all attached TV mounting brackets; all attached shelving; attached work benches; stationary laundry tubs; water softener; water heater; incinerator; sump pump; water pump and pressure tank; heating and air conditioning equipment (window units excluded); attached humidifiers; heating units, including add-on heating stoves and heating stoves connected by flue pipe; fireplace screens, inserts, and grates; fireplace doors, if attached; liquid heating and cooking fuel tanks; TV antenna and complete rotor equipment; satellite dish and necessary accessories and complete rotor equipment; all support equipment for inground pools; screens and storm windows and doors; awnings; installed basketball backboard, pole and goal; mailbox; flagpole(s); fencing, invisible inground fencing and all related equipment, including

 Buyer's Initials    Seller's Initials   **Exhibit B**

Copyright January 2025 by the Southwestern Michigan Association of REALTORS®, Inc. Use of this form by non-members is strictly prohibited.
At World Properties Michigan LLC, 2 N Whittaker St, New Buffalo MI 49117                Phone: (312)636-8751        Fax: (800)451-
Elizabeth Roch                    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com



# PURCHASE AGREEMENT

collars; detached storage buildings; underground sprinkling, including the pump; installed outdoor grills; all plantings and bulbs; garage door opener and control(s); and any and all items and fixtures permanently affixed to the Property;
**and also includes**: _____

**but does not include**: _____

**Rented Items**: Seller agrees to provide Buyer, within three (3) business days of the Effective Date, a complete list of all rented items associated with the property, including but not limited to, water softeners, propane tanks, security systems, or any other leased equipment. Additionally, Seller will provide the names and contact information of all vendors or service providers responsible for these items, along with the terms of the agreements, if available. If Seller fails to deliver this information to Buyer within three (3) business days of the Effective Date, Buyer shall have three (3) business days to terminate this Agreement, by written notice to Seller, and receive a refund of Buyer's deposit. Buyer's failure to terminate the Purchase Agreement pursuant to the preceding sentence will be deemed a waiver of the requirement.

**6. TERMS**: The Terms of Purchase will be (*choose one, other unmarked terms of purchase do not apply*). Buyer represents that the source of funds necessary to close this transaction, based on the terms specified below, are currently available to Buyer in cash, an equally liquid equivalent, or will be provided through financing as evidenced by a mortgage lender's pre-approval or commitment letter.

If the Property's value stated in an appraisal obtained by Buyer or Buyer's lender is less than the Purchase Price, Buyer shall within three (3) business days after receipt of the appraisal: 1) renegotiate with the Seller, 2) terminate the transaction, in which case Buyer shall receive a refund of Buyer's deposit, or 3) proceed to close the transaction at the agreed Purchase Price. If Buyer fails to notify Seller of their choice within the specified three (3) day period, it is deemed that Buyer has accepted the appraisal and elected to proceed to closing under the original terms of this Agreement.

☒ CASH. The full Purchase Price upon execution and delivery of Warranty Deed. Buyer agrees to provide Buyer Agent/Dual Agent verification of funds within _____2_____ business days after the Effective Date, and consents to the disclosure of such information to Seller and/or Seller's Agent. If verification of funds is not received, Seller may terminate this Agreement at any time before verification of funds is received by giving written notice to Buyer. Any appraisal requested by Buyer shall be arranged and paid for by Buyer within _____2_____ business days after the Effective Date of this Agreement (*choose one*).

- ☐ Buyer elects to order an appraisal for informational purposes only created by this paragraph 6 and thereby expressly waiving any rights to (1) renegotiate the Purchase Price with Seller, or 2) terminate this transaction and receive a refund of Buyer's deposit due to the Purchase Price.
- ☐ Buyer elects to include an appraisal contingency. If the appraisal determines that the property's value is less than the agreed Purchase Price, Buyer reserves the right to renegotiate the Purchase Price with Seller or terminate this Agreement and receive a refund of Buyer's deposit.
- ☒ Buyer waives the appraisal contingency created by this paragraph 6, thereby expressly waiving any rights to 1) renegotiate the Purchase Price with Seller, or 2) terminate this transaction and receive a refund of Buyer's deposit due to the Purchase Price.

☐ NEW MORTGAGE. The full purchase price upon execution and delivery of a Warranty Deed contingent upon Buyer's ability to obtain a _____%; _____ mortgage which Buyer agrees to apply for within _____ business days after the Effective Date and accept promptly if tendered. In the event that the Buyer does not apply for financing within the time provided above, the Seller may terminate this Agreement by written notice to the Buyer prior to the time the Buyer makes application for financing. Buyer hereby authorizes their lender to disclose the status of the loan application and loan approval to Listing and Selling REALTORS®/Brokers and release copy of the Closing Disclosure, when issued, to Listing and Selling REALTORS®/ Brokers.

☐ SELLER FINANCING (choose one). ☐ LAND CONTRACT or ☐ PURCHASE MONEY MORTGAGE In the case of Seller financing, Buyer agrees to provide Seller with a credit report within three (3) business days after the Effective Date. If the credit report is unacceptable to Seller, Seller shall have the right to terminate this offer within three (3) business days of Seller's receipt, or if Buyer fails to provide said credit report to Seller within the time frame allotted, Seller shall have the right to terminate this offer within three (3) business days. Seller is advised to seek professional advice regarding the credit report.

$_____ upon execution and delivery of Land Contract/Purchase Money Mortgage wherein the balance of the purchase price shall be payable in equal monthly installments of $_____ or more per month. The first installment shall be due

_SD_ Buyer's Initials     _KW_ Seller's Initials

# PURCHASE AGREEMENT

and payable _____ calendar days after date of closing. The monthly installment will include interest at _____% per annum. Interest shall commence on the date of closing. The entire balance shall be payable within _____ months. In addition, Buyer agrees to pay all taxes and Insurance ☐ separately when due or ☐ monthly in addition to the above monthly payment. Any appraisal required by Buyer shall be arranged and paid for by Buyer within _____ business days after the Effective Date of this Agreement (*choose one*).

- ☐ Buyer elects to order an appraisal for informational purposes only created by this paragraph 6 and thereby expressly waiving any rights to (1) renegotiate the Purchase Price with Seller, or 2) terminate this transaction and receive a refund of Buyer's deposit due to the Purchase Price
- ☐ Buyer elects to include an appraisal contingency. If the appraisal determines that the property's value is less than the agreed Purchase Price, Buyer reserves the right to renegotiate the Purchase Price with Seller or terminate this Agreement and receive a refund of Buyer's deposit.
- ☐ Buyer waives the appraisal contingency created by this paragraph 6, thereby expressly waiving any rights to 1) renegotiate the Purchase Price with Seller, or 2) terminate this transaction and receive a refund of Buyer's deposit due to the Purchase Price.

**7. CONTINGENCIES**: Buyer's obligation to consummate this transaction (*choose one*):

☒ IS NOT CONTINGENT - is not contingent upon the sale or exchange of any other Property by Buyer.
☐ IS CONTINGENT UPON CLOSING - is contingent upon closing of an existing sale or exchange of Buyer's Property located at: _____.
A copy of Buyer's agreement to sell or exchange that Property is being delivered to Seller along with this offer. If the existing sale or exchange terminates for any reason, Buyer will immediately notify Seller, and either party may terminate this Agreement in writing, within three (3) calendar days of Buyer's notice to Seller. If either party terminates, Buyer shall receive a refund of any applicable deposit.
☐ IS CONTINGENT UPON THE SALE AND CLOSING - is contingent upon the execution of a binding agreement and the closing of a sale or exchange of Buyer's Property located at: _____
on or before _____. Seller will have the right to continue to market Seller's Property until Buyer enters into a binding agreement to sell or exchange Buyer's Property and delivers a copy thereof to Seller. During such marketing period, Seller may enter into a binding contract for sale to another purchaser on such price and terms as the Seller deems appropriate. In such event, this Agreement will automatically terminate, Buyer will be notified promptly, and Buyer's deposit will be refunded.
☐ IS CONTINGENT on the terms of the attached Contingency Clause Addendum.

**8. EARNEST MONEY DEPOSIT**: The Buyer shall deposit $ **10,000.00** with **Chicago Title** _____ (Escrowee) as earnest money, demonstrating good faith, to be held in trust and applied to the Purchase Price.

☐ Buyer has submitted the deposit with this offer.
☒ Buyer will submit the deposit no later than **August 25, 2025**.

FAILURE TO SUBMIT OR INSUFFICIENT FUNDS: If the deposit is not received by the specified deadline or is returned for insufficient funds, the Seller may terminate this Agreement by written notice to the Buyer before the deposit is received. In such a case, the Seller waives any claim to the deposit.
REFUND OF DEPOSIT: If the Agreement is not accepted, title is not marketable, or contingencies cannot be satisfied (with written proof), the deposit will be refunded to the Buyer.
DISPUTES OVER DEPOSIT: If the sale does not close and the parties cannot agree on the deposit's disposition, the Broker holding it shall notify both parties in writing of its intended action (15-day letter). If no written objections are received within fifteen (15) calendar days, the proposed disposition is deemed accepted by both parties. If objections arise and no resolution is reached, the Broker may deposit the funds with a court via interpleader or await further action. If both parties claim the deposit, the Escrowee will hold it in trust until a civil court determines its disposition, both parties agree in writing, or the Escrowee files an interpleader action.
ESCROW AGREEMENT TERMS: If an entity other than the Broker is holding the deposit and there is a conflict between this Agreement and the terms of the escrow agreement, the escrow agreement will take precedence.

**9. CLOSING**: The sale shall be closed on **September 30, 2025** or before, if mutually agreed by the parties. Closing of this sale shall be an insured closing through the title company that provides the mortgage policy of title insurance, or in the case of a cash sale, the owner's policy of title insurance. The closing fee shall be paid by the Buyer.

_SD_ Buyer's Initials   _KW_ Seller's Initials




# PURCHASE AGREEMENT

**10. PRE-CLOSING WALK-THROUGH**: Buyer (*choose one*) ☒ reserves or ☐ waives the right to conduct a final walk-through of the Property within three (3) calendar days of the scheduled closing date. The purpose of the walk-through is to determine that the Property is in a substantially similar condition as of the Effective Date, any contractually agreed upon items have been fulfilled, and that any included personal Property is still located at the Property. Buyer shall immediately report to Seller any objections to these conditions and Buyer's requested corrective action.

**11. POSSESSION**: Seller will maintain the Property in its present condition until the completion of the closing of the sale. For purposes of determining possession, the transaction will be considered closed once all necessary documents have been signed and received by escrow agent and funds have been received by the escrow agent. Seller agrees that between now and the time of possession, Seller at Seller's expense, shall repair any subsequent damage to the Property and shall continue general maintenance of the yard, buildings, and mechanical systems. Seller shall not turn off utilities prior to the time of possession. Seller shall deliver any personal property included in the sale, as well as all keys, transmitters, security codes and passwords in Seller's possession. Seller shall not "swap" fixtures or any other items included in sale. Subject to rights of present tenants, if any, possession to be delivered to Buyer (*choose one*).

On the agreed delivery date, Seller shall deliver the Property free of trash and debris and in broom-clean condition, shall remove all personal property (unless otherwise stated in this or an additional written agreement), shall make arrangements for final payment on all utilities and shall deliver all keys to Buyer.

☒ At the completion of the closing of the sale. If Seller fails to deliver possession to Buyer on the agreed date, Seller shall become a tenant at sufferance and shall pay to Buyer as liquidated damages $ **250.00** per day plus all of the Buyer's actual reasonable attorney's fees incurred in removing the Seller from the Property.

☐ See attached Temporary Occupancy Addendum. Buyer and Seller agree to sign a Temporary Occupancy Addendum to the Purchase Agreement which will be an integral part of this Agreement.

**12. SELLER'S DISCLOSURE STATEMENT**: (This paragraph applies to sales of one-to-four family residential units.) (*choose one*):
  ☐ Buyer has received the Seller's Disclosure Statement, dated _____.
  ☐ Buyer has not received the Seller's Disclosure Statement. Buyer may terminate this Agreement, in writing, any time prior to receipt of the Seller's Disclosure Statement. Once Buyer has received the Seller's Disclosure Statement, Buyer may terminate this Agreement, in writing, within 72 hours of receipt if the Seller's Disclosure Statement was received in person, or within 120 hours if received by registered mail.
  ☒ Seller is exempt from the requirements of the Seller Disclosure Act.

**13. LEAD-BASED PAINT DISCLOSURE**: Transactions involving homes built prior to 1978 require a written disclosure which is hereby attached and will be an integral part of this agreement.

**14. INSPECTIONS/PERMITS/INVESTIGATIONS**: Buyer, or someone selected by Buyer, has the right to inspect the buildings, premises, components and systems, at Buyer's expense. Any damage, misuse, abuse, or neglect of any portion of the Property or premises as a result of inspections will be Buyer's responsibility and expense. Seller agrees to ensure that all utilities (including, but not limited to, electricity, gas, water, and any other applicable services) are turned on and functioning at the time of all inspections, including the final walkthrough. This obligation shall remain in effect through the inspection period and until the day of closing, unless otherwise agreed in writing by both parties.

It is Buyer's responsibility to investigate whether the Property complies with applicable codes and local ordinances and whether the Property is zoned for Buyer's intended use; whether Buyer can obtain a homeowner's insurance policy for the Property at price and terms acceptable to Buyer; and whether or not the Property is in a flood zone.

☒ This Agreement is contingent upon, but not limited to, the following inspections/permits/investigations. The results of which are to be satisfactory to the Buyer on the following items (*check applicable boxes*):

| | |
|---|---|
| ☐ Home Inspection | ☐ Percolation Test/Soil Analysis |
| ☐ Wood Destroying Insect Inspection | ☐ Septic System Inspection |
| ☐ Radon Inspection | ☐ Well Inspection |
| ☐ Lead Based Paint Inspection | ☒ Other **all major appliances** |
| ☐ Water Quality Test | ☐ Other _____ |
| ☐ Water/Well Permit | ☐ Other _____ |

_Initial_ *SD* Buyer's Initials     *KW* Seller's Initials

 

## PURCHASE AGREEMENT

When a septic system inspection is required, the ☐ Buyer or ☐ Seller shall pay to have the septic tank pumped at the time of the inspection if recommended or required by the Septic Inspector. All inspections and investigations will be completed within _____7_____ business days after the Effective Date ("Inspection Period").

☐ Buyer has waived all rights under this Inspections/Permits/Investigations paragraph and is accepting property in **"AS IS"** condition.

If the results of Buyer's inspections and investigations are not acceptable, Buyer may, before the expiration of the Inspection Period: (a) provide written notice to Seller proposing specific repairs or remedies in the form of a signed addendum; (b) accept the Property AS-IS by taking no action within the Inspection Period; or (c) terminate this Agreement by written notice to Seller. If Buyer does not submit a written proposal or termination notice before the end of the Inspection Period, Buyer will be deemed to have accepted the Property AS-IS, and the inspection contingency shall be considered waived.

If Buyer submits a written proposal during the Inspection Period, Seller shall respond in writing within ___2 (two)___ business days ("Seller's Response Period"), indicating one of the following: (a) agree to correct or address the defect(s) as proposed; (b) offer to credit Buyer a sum of money at closing; (c) reduce the Purchase Price; or (d) rejection of the proposed addendum without offering alternatives.

Upon receipt of Seller's response, or if Seller fails to respond within the Seller's Response Period, Buyer shall have ___2 (two)___ business days to provide written notice electing to: (a) accept Seller's proposed resolution; (b) proceed with the purchase of the Property in its AS-IS condition; or (c) terminate this Agreement.

If Buyer fails to provide written notice of their election within the specified timeframe, this Agreement may be terminated by either party until such notice is given. In the event either party terminates this Agreement, Buyer shall receive a refund of Buyer's deposit and neither party will have any further obligation to the other.

**15. PROPERTY SURVEY**: Broker advises that Buyer should have a survey performed to satisfy Buyer as to the boundaries of the Property and the location of improvements thereon. (*Choose one*) ☐ Buyer or ☒ Seller shall within ___2___ business days of the Effective Date, order, at their expense, a boundary survey with iron corner stakes showing the location of the boundaries, improvements and easements in connection with the Property. Upon receipt of the survey, Buyer will have three (3) business days to review the survey. If the survey shows any condition, in Buyer's sole discretion, which would interfere with Buyer's intended use of the Property, the marketability of the title, or zoning non-compliance, then Buyer may, within said three (3) business day period, terminate this Agreement, in writing, and Buyer will receive a full refund of Buyer's deposit.

☐ No survey, Buyer has waived all rights under this paragraph.

When closing occurs, Buyer shall be deemed to have accepted the boundaries of the Property and the location of such improvements thereon.

**16. HEATING AND COOKING FUELS**: Wood, pellets, liquid or gas heating/cooking fuels in tanks, and _____ are included in the sale and will transfer to Buyer at time of possession unless usage is metered (in which case it is not included in the sale). Sellers are responsible for maintaining wood, pellets, heating and cooking liquid fuels and _____ at an operational level and shall not permit fuels to fall below 10% in the tank(s) at the time of possession, except that the tank(s) may be empty only if now empty.

**17. ASSESSMENTS**: If the Property is subject to any assessments (*choose one*),

☒ Seller shall pay the entire balance of any such assessments that are due and payable on or before the day of closing (regardless of any installment arrangements), except for any fees that are required for future connection to public utilities.
☐ Seller shall pay all installments of such assessments that become due and payable on or before day of closing. Buyer shall assume and pay all other installments of such assessments.

Seller has an ongoing obligation through the Closing to disclose to the Buyer any known pending assessments, including, but not limited to, any mandatory utility connection requirements, and/or benefit charges, and condominium special assessments, that have not been previously disclosed in writing to Buyer.

_SD_ Buyer's Initials     _KW_ Seller's Initials



# PURCHASE AGREEMENT

**18. PRORATIONS**: Taxes and the current year's installment payment of any special assessment will be prorated as of the closing date. Seller will pay all real estate taxes first due and payable in calendar years before the date of closing. Real estate taxes for the calendar year in which closing occurs shall be prorated on a daily basis through the day before closing based on the most recent tax statements and tax rates for the Property available at the time of closing. Tax statements first due and payable in the calendar year of closing shall be deemed to cover the period from January 1 to December 31 of that calendar year. Buyer is responsible for all costs, including taxes, on the day of closing. Seller will receive a credit against the prorated taxes for any amounts paid during the calendar year of closing.

If the Property does not currently have a principal residence exemption (a NON PRE Property) and the Buyer will both close and occupy the Property as their principal residence prior to June 1 of the current year, then the school portion of the property tax bill will be prorated based on the Property having a PRE. If the Property is currently a NON PRE Property and the Buyer will both close and occupy the Property as their principal residence on or before June 1 and or before November 1 of the current year, then the school portion of the winter Property tax bill, if any, will be prorated based on the Property having a PRE.

**19. MISCELLANEOUS PRORATED ITEMS**: Rents; association dues/fees, if any; insurance, if assigned; interest on any existing land contract, mortgage or lien assumed by Buyer; will all be adjusted through the day before closing. For the purposes of calculating prorations, it is presumed Seller owns the Property through the day before closing and Buyer assumes responsibility starting on the day of closing.

**20. TITLE INSURANCE**: Seller agrees to convey marketable title to the Property by Warranty Deed subject to conditions, limitations, reservation of oil, gas and other mineral rights, existing zoning ordinances, and building and use restrictions and easements of record. An expanded coverage ALTA Homeowner's Policy of Title Insurance in the amount of the Purchase Price shall be ordered by Seller and furnished to Buyer at Seller's expense, and a commitment to issue a policy insuring marketable title vested in Buyer, including a real estate tax status report, will be made available to Buyer within ten (10) business days after the Effective Date.

If Buyer so chooses, or if an expanded policy is not applicable, then a standard ALTA Owners' Policy of Title Insurance shall be provided. If Buyer objects to any conditions, Buyer may, within three (3) business days of receipt of the Title Commitment, by written notice to Seller, either terminate this Agreement and receive a refund of Buyer's deposit or make a written proposal to Seller to correct those unsatisfactory conditions. If Buyer fails to make a written proposal within the above referenced time period, then Buyer will be deemed to have accepted the Title Commitment as-is. Seller may negotiate with Buyer, or by written notice to Buyer, accept Buyer's proposal or terminate this Agreement. If Seller fails to respond, or to arrive at a mutually agreeable resolution within three (3) business days after Seller's receipt of Buyer's proposal, Buyer shall have three (3) business days to provide written notice of termination of this Agreement and shall receive a refund of any applicable Buyer's deposit. If Buyer fails to terminate this Agreement within said three (3) business day period, Buyer will be deemed to accept the Title Commitment as-is and will proceed to closing according to the terms and conditions of this Agreement.

**21. HOME PROTECTION PLAN**: Buyer and Seller have been informed that home protection plans may be available. Such plans may provide additional protection and benefit to the parties. The Buyer hereby (*choose one*):

- ☒ Waives a Home Protection Plan or
- ☐ Requests a Home Protection Plan provided by: _____ (name of company). The plan will cover a period of _____ (e.g., 1 year) starting from the date of closing. The cost of the plan will be paid by: ☐ Buyer or ☐ Seller. If requested, the party responsible for payment will ensure the plan is ordered and confirmed at the time of closing.

**22. PROFESSIONAL ADVICE**: Broker hereby advises Buyer and Seller to seek legal, tax, environmental and other appropriate professional advice relating to this transaction. Broker does not make any representations or warranties with respect to the advisability of, or the legal effect of this transaction. Buyer further acknowledges that REALTOR® above named in the Agreement hereby recommends to Buyer that an attorney be retained by Buyer to pass upon the marketability of the title and to ascertain that the required details of the sale are adhered to before the transaction is consummated. Buyer agrees that Buyer is not relying on any representation or statement made by Seller or any real estate salesperson (whether intentionally or negligently) regarding any aspect of the Property or this sale transaction, except as may be expressly set forth in this Agreement, a written amendment to this Agreement, or a disclosure statement separately signed by Seller.



_SD_ Buyer's Initials     _KW_ Seller's Initials

 

## PURCHASE AGREEMENT

Initial

~~23.~~ **OTHER PROVISIONS**: 1) Buyer is a licensed real estate broker  2) Buyer and seller to have 7 (seven) business day attorney review period. 3) Buyer intends to acquire the Property as part of a tax-deferred exchange under Section 1031 of the Internal Revenue Code. Seller agrees to cooperate with Buyer in connection with such exchange, provided that such cooperation shall be at no cost, expense, or liability to Seller and shall not delay the closing. 4) Buyer is accepting the property in AS-IS condition as long as all major appliances are in working condition. 5) Seller to pay 2.5% of purchase price to Buyer's Broker at closing.

Attachments and Addenda referenced here are part of this Agreement: __Buyer's Broker Compensation Addendum, Seller's Disclosure__

**24. DISCLOSURE OF INFORMATION**: Buyer and Seller acknowledge and agree that the Purchase Price, terms, and other details with respect to this transaction (when closed) are not confidential, will be disclosed to REALTORS® who participate in the applicable Multiple Listing Service, and may otherwise be used and/or published by that Multiple Listing Service in the ordinary course of its business.

**25. MERGERS AND INTEGRATIONS**: This Agreement is the final expression of the complete agreement of Buyer and Seller, and there are no oral agreements existing between Buyer and Seller relating to this transaction. This Agreement may be amended only in writing signed by Buyer and Seller and attached to this Agreement.

**26. ELECTRONIC COMMUNICATION**: Buyer and Seller agree that any signed copy of this Agreement, and any amendments or addendums related to this transaction, transmitted by facsimile or other electronic means shall be competent evidence of its contents to the same effect as an original signed copy. **Any such communication shall be deemed delivered at the time it is sent or transmitted.** Buyer and Seller further agree that an electronic signature is the legal equivalent of a manual or handwritten signature, and consent to use of electronic signatures. Buyer and Seller agree that any notice(s) required or permitted under this Agreement may also be transmitted by facsimile or other electronic means.

**27. WIRE FRAUD**: Seller and Buyer are advised that wire fraud is an increasingly common problem. If you receive any electronic communication directing you to transfer funds or provide nonpublic personal information (such as social security numbers, drivers' license numbers, wire instructions, bank account numbers, etc.), even if that electronic communication appears to be from the Broker, Title Company, or Lender, DO NOT reply until you have verified the authenticity of the email by direct communication with Broker, Title Company, or Lender. DO NOT use telephone numbers provided in the email. Such requests may be part of a scheme to steal funds or use your identity.

**28. FAILURE TO CLOSE**: If Buyer fails to close the transaction as required in this Agreement, Seller may elect to retain Buyer's deposit as liquidated damages, seek recovery of actual damages, or specifically enforce this Agreement. If Seller fails to close pursuant to this Agreement, Buyer may receive a refund of Buyer's deposit and obtain any other relief available at law or equity. In the event of a dispute arising from the breach or alleged breach of this Agreement is brought to any court for determination, the prevailing party in such action shall be entitled, in addition to any other relief available to an award of actual, reasonable attorney's fees incurred in such action, including any appeal of any trial court decision.

**29. THE PARTIES HERETO AGREE** that this is a legal and binding agreement, consisting of 8 (EIGHT) pages and the exhibits and addenda specifically referred to herein and constitutes the entire understanding of the parties and there are no other agreements, expressed or implied.

**30. BUYER'S APPROVAL AND ACKNOWLEDGMENT**: Buyer approves the terms of this offer and acknowledges receipt of a copy of this offer. **Unless previously withdrawn by the Buyer, the Seller must accept this offer in writing prior to** __August 19, 2025__ at __12:00__ (☐ am, ☐ pm, ☒ noon) or this offer shall terminate.

Signed by: /s/ _____  8/18/2025

Buyer Signature  Date/Time                    Buyer Signature         Date/Time

**Stephen Dykun or assigns**
Buyer Printed Name                              Buyer Printed Name

_KW_ Seller's Initials

Copyright January 2025 by the Southwestern Michigan Association of REALTORS®. Inc. Use of this form by non-members is strictly prohibited.

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com



## PURCHASE AGREEMENT

**31. SELLER'S RESPONSE**: As Sellers of the Property described herein, the undersigned accepts the Buyer's offer (*choose one*) ☐ as written and no further Buyer signatures are required; or ☐ except for the following changes in Seller's Counter-Offer below:

—A) Earnest money deposit is $37,500 with $15,000 payable no later than 48 hours after final signatures and another $22,500 in another 48 hours. B) IIf any major appliance is not working, seller has the right to replace it with a brand new one of similar make and model or provide a credit for the same amount

The Seller agrees to sell the Property under the terms stated. **If the Seller makes a counter-offer, the Buyer must accept it in writing by (date)** _____ **at (time)** _____ (☐ am, ☐ pm, ☐ noon). If Buyer does not accept by this time, the counter-offer will expire. Seller understands that selling or transferring the Property does not release them from any mortgage liabilities unless the lender agrees or the law requires it.

Owner of Record _____

*AuthentiSIGN*
*Kerry M Wright II*          08/20/2025 1:02 AM
Seller Signature              Date/Time           Seller Signature           Date/Time

**owner of record**
Seller Printed Name                              Seller Printed Name

**32. BUYER'S RESPONSE**: Buyer hereby accepts Seller's Counter-Offer in paragraph 31 above either (*choose one*) ☐ as written and no further Seller signatures are required; or ☐ except for the following changes in Buyer's Counter-Offer below:

_____
_____
_____
_____

**In the event of a Buyer's Counter-Offer, unless previously withdrawn by the Buyer, the Seller must accept Buyer's Counter-Offer in writing prior to (date)** _____ **at (time)** _____ (☐ am, ☐ pm, ☐ noon) **or Buyer's Counter-Offer shall terminate.**

_____                    Date/Time           _____                   Date/Time
Buyer Signature                                          Buyer Signature
**Stephen Dykun or assigns**

**33. SELLER'S RESPONSE**: As owners and Sellers of the Property described herein, the undersigned (*choose one*) ☐ accepts the Buyer's Counter-Offer and no further Buyer signatures are required; or ☐ rejects Buyer's Counter-Offer

08/20/2025 1:02 AM
Seller Signature                  Date/Time           Seller Signature              Date/Time
**owner of record**

**DISCLAIMER**: This form is provided as a service of the Southwestern Michigan Association of REALTORS®, Inc. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Southwestern Michigan Association of REALTORS®, Inc is not responsible for use or misuse of the form, for misrepresentation, or for warranties made in connection with the form.

Copyright January 2025 by the Southwestern Michigan Association of REALTORS®, Inc. Use of this form by non-members is strictly prohibited

# MICHIGAN REALTORS®

## BUYER'S BROKER COMPENSATION ADDENDUM



ADDENDUM to Purchase Agreement between

Buyer **Stephen Dykun or assigns**

and Seller **owner of record**

for Property known as **50102 Alpine Boulevard, New Buffalo, MI 49117**

The following provisions are included in and supersede any conflicting language in the Purchase Agreement.

In addition to any other amount(s) which Seller has agreed to pay under other provisions of the Purchase Agreement, at closing, Seller shall pay, on Buyer's behalf, the sum of $ _____ OR **2.500** % of the Purchase Price to **At World Properties Michigan LLC** (Buyer's Broker).

**All other terms and conditions of the Purchase Agreement remain in full force and effect.**

_Signed by: [signature]_  8/18/2025
AA8A3735B2FA4A9...
Buyer Signature                                        Date
**Stephen Dykun or assigns**

_Authentisign: Kerry M Wright II_  08/20/2025
Seller Signature                                       Date
**owner of record**

_____          _____
Buyer Signature          Date         Seller Signature          Date

**Disclaimer:** This form is provided as a service of the Michigan REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan REALTORS® is not responsible for use or misuse of the form, for misrepresentation, or for warranties made in connection with the form.

## Seller's Disclosure Statement

**Property Address** ___50102 Alpine Boulevard___  ___New Buffalo___  MICHIGAN
Street  City, Village or Township

**Purpose of Statement:** This statement is a disclosure of the condition of the property in compliance with the Seller Disclosure Act. This statement is a disclosure of the condition and information concerning the property, known by the Seller. Unless otherwise advised, the Seller does not possess any expertise in construction, architecture, engineering or any other specific areas related to the construction or condition of the improvements on the property or the land. Also, unless otherwise advised, the Seller has not conducted any inspection of generally inaccessible areas such as the foundation or roof. **This statement is not a warranty of any kind by the Seller or by any Agent representing the Seller in this transaction, and is not a substitute for any inspections or warranties the Buyer may wish to obtain.**

**Seller's Disclosure:** The Seller discloses the following information with the knowledge that even though this is not a warranty, the Seller specifically makes the following representations based on the Seller's knowledge at the signing of this document. Upon receiving this statement from the Seller, the Seller's Agent is required to provide a copy to the Buyer or Agent of the Buyer. The Seller authorizes its Agent(s) to provide a copy of this statement to any prospective Buyer in connection with any actual or anticipated sale of property. The following are representations made solely by the Seller and are not the representations of the Seller's Agent(s), if any. **THIS INFORMATION IS A DISCLOSURE ONLY AND IS NOT INTENDED TO BE PART OF ANY CONTRACT BETWEEN BUYER AND SELLER.**

**Instructions to the Seller:** (1) Answer ALL questions. (2) Report known conditions affecting the property. (3) Attach additional pages with your signature if additional space is required. (4) Complete this form yourself. (5) If some items do not apply to your property, check NOT AVAILABLE. If you do not know the facts, check UNKNOWN. FAILURE TO PROVIDE A PURCHASER WITH A SIGNED DISCLOSURE STATEMENT WILL ENABLE PURCHASER TO TERMINATE AN OTHERWISE BINDING PURCHASE AGREEMENT.

**Appliances/ Systems/ Services:** The items below are in working order. (The items listed below are included in the sale of the property only if the purchase agreement so provides.)

| | Yes | No | Unknown | Not Available | | Yes | No | Unknown | Not Available |
|---|---|---|---|---|---|---|---|---|---|
| Range/oven | | | | | Washer | | | | |
| Dishwasher | | | | | Dryer | | | | |
| Refrigerator | | | | | Lawn sprinkler system | | | | |
| Hood/fan | | | | | Water heater | | | | |
| Disposal | | | | | Plumbing system | | | | |
| TV antenna, TV rotor & controls | | | | | Water softener/conditioner | | | | |
| Electrical system | | | | | Well & pump | | | | |
| Garage door opener & remote control | | | | | Septic tank & drainfield | | | | |
| Alarm system | | | | | Sump pump | | | | |
| Intercom | | | | | City water system | | | | |
| Central vacuum | | | | | City sewer system | | | | |
| Attic fan | | | | | Central air Conditioning | | | | |
| Pool heater, wall liner & equipment | | | | | Central heating system | | | | |
| | | | | | Wall Furnace | | | | |
| Microwave | | | | | Humidifier | | | | |
| Trash compactor | | | | | Electronic air filter | | | | |
| Ceiling fan | | | | | Solar heating system | | | | |
| Sauna/hot tub | | | | | Fireplace & chimney | | | | |
| | | | | | Wood burning system | | | | |

(Watermark across table: NON OCCUPANT FIDUCIARY EVENT)

Explanation (attach additional sheets if necessary): _____

UNLESS OTHERWISE AGREED, ALL HOUSEHOLD APPLIANCES ARE SOLD IN WORKING ORDER EXCEPT AS NOTED, WITHOUT WARRANTY BEYOND DATE OF CLOSING.

**Property conditions, improvements & additional information:**
1. **Basement/Crawlspace:** Has there been evidence of water?  yes ____ no ____
   If yes, please explain: _____
2. **Insulation:** Describe, if known: _____
   Urea Formaldehyde Foam Insulation (UFFI) is installed?  unknown ____ yes ____ no ____
3. **Roof:** Leaks?  yes ____ no ____
   Approximate age if known: _____
4. **Well:** Type of well (depth/diameter, age and repair history, if known): _____
   Has the water been tested?  yes ____ no ____
   If yes, date of last report/results: _____
5. **Septic tanks/drain fields:** Condition, if known: _____
6. **Heating system:** Type/approximate age: _____
7. **Plumbing system:** Type:  copper ____  galvanized ____  other ____
   Any known problems? _____
8. **Electrical system:** Any known problems? _____  Initial
9. **History of infestation**, if any: (termites, carpenter ants, etc.) _____

_____KMW_____ Seller's Initials  _____SD_____ Buyer's Initials

Page 1 of 2
Rev. 1/06

Wright Properties, 260 Cavelier St Joseph MI 49085   Phone: 2693694640   Fax: 2699268088   50102 Alpine Blvd
Kerry M Wright II   Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St. Suite 2200, Dallas, TX 75201   www.lwolf.com

## Seller's Disclosure Statement

**Property Address** _50102 Alpine Boulevard_ _____ **New Buffalo** _____ **MICHIGAN**
Street — City, Village or Township

10. **Environmental problems:** Are you aware of any substances, materials or products that may be an environmental hazard such as, but not limited to, asbestos, radon gas, formaldehyde, lead-based paint, fuel or chemical storage tanks and contaminated soil on the property.
    unknown ___ yes ___ no ___
    If yes, please explain: _____
11. **Flood Insurance:** Do you have flood insurance on the property?   unknown ___ yes ___ no ___
12. **Mineral Rights:** Do you own the mineral rights?   unknown ___ yes ___ no ___

**Other Items:** Are you aware of any of the following:
1. Features of the property shared in common with the adjoining landowners, such as walls, fences, roads and driveways, or other features whose use or responsibility for maintenance may have an effect on the property?   unknown ___ yes ___ no ___
2. Any encroachments, easements, zoning violations or nonconforming uses?   unknown ___ yes ___ no ___
3. Any "common areas" (facilities like pools, tennis courts, walkways, or other areas co-owned with others), or a homeowners' association that has any authority over the property?   unknown ___ yes ___ no ___
4. Structural modifications, alterations, or repairs made without necessary permits or licensed contractors?   unknown ___ yes ___ no ___
5. Settling, flooding, drainage, structural, or grading problems?   unknown ___ yes ___ no ___
6. Major damage to the property from fire, wind, floods, or landslides?   unknown ___ yes ___ no ___
7. Any underground storage tanks?   unknown ___ yes ___ no ___
8. Farm or farm operation in the vicinity; or proximity to a landfill, airport, shooting range, etc.?   unknown ___ yes ___ no ___
9. Any outstanding utility assessments or fees, including any natural gas main extension surcharge?   unknown ___ yes ___ no ___
10. Any outstanding municipal assessments or fees?   unknown ___ yes ___ no ___
11. Any pending litigation that could affect the property or the Seller's right to convey the property?   unknown ___ yes ___ no ___

If the answer to any of these questions is yes, please explain. Attach additional sheets, if necessary: _____

The Seller has lived in the residence on the property from _____ (date) to _____ (date).
The Seller has owned the property since _____ (date).
The Seller has indicated above the condition of all the items based on information known to the Seller. If any changes occur in the structural/mechanical/appliance systems of this property from the date of this form to the date of closing, Seller will immediately disclose the changes to Buyer. In no event shall the parties hold the Broker liable for any representations not directly made by the Broker or Broker's Agent.

1.

Seller certifies that the information in this statement is true and correct to the best of Seller's knowledge as of the date of Seller's signature.

BUYER SHOULD OBTAIN PROFESSIONAL ADVICE AND INSPECTIONS OF THE PROPERTY TO MORE FULLY DETERMINE THE CONDITION OF THE PROPERTY. THESE INSPECTIONS SHOULD TAKE INDOOR AIR AND WATER QUALITY INTO ACCOUNT, AS WELL AS ANY EVIDENCE OF UNUSALLY HIGH LEVELS OF POTENTIAL ALLERGENS INCLUDING, BUT NOT LIMITED TO, HOUSEHOLD MOLD, MILDEW AND BACTERIA.

BUYER IS ADVISED THAT CERTAIN INFORMATION COMPILED PURSUANT TO THE SEX OFFENDERS REGISTRATION ACT, 1994 PA 295, MCL 28.721 TO 28.732 IS AVAILABLE TO THE PUBLIC. BUYERS SEEKING SUCH INFORMATION SHOULD CONTACT THE APPROPRIATE LOCAL LAW ENFORCEMENT AGENCY OR SHERIFF'S DEPARTMENT DIRECTLY.

BUYER IS ALSO ADVISED THAT THE STATE EQUALIZED VALUE OF THE PROPERTY, PRINCIPAL RESIDENCE EXEMPTION INFORMATION AND OTHER REAL PROPERTY TAX INFORMATION IS AVAILABLE FROM THE APPROPRIATE LOCAL ASSESSOR'S OFFICE. **BUYER SHOULD NOT ASSUME THAT BUYER'S FUTURE TAX BILLS ON THE PROPERTY WILL BE THE SAME AS THE SELLER'S PRESENT TAX BILLS. UNDER MICHIGAN LAW, REAL PROPERTY TAX OBLIGATIONS CAN CHANGE SIGNIFICANTLY WHEN PROPERTY IS TRANSFERRED.**

Seller _[signature]_ Date _5/9/25_

Seller _____ Date _____

Buyer has read and acknowledges receipt of this statement.

Buyer _[signature]_ AA8A3735B2FA4A9  Date _8/18/2025_  Time _____

Buyer _____ Date _____ Time _____

**Disclaimer:** This form is provided as a service of the Michigan Association of REALTORS®. Please review both the form and details of the particular transaction to ensure that each section is appropriate for the transaction. The Michigan Association of REALTORS® is not responsible for use or misuse of the form for misrepresentation or for warranties made in connection with the form.

*(Watermark across form: "NON PAYMENT NON FIDUCIARY EXEMPT")*

## ADDENDUM TO PURCHASE AGREEMENT

This Addendum to Purchase Agreement with the effective date of August 20, 2025 for the purchase of 50102 Alpine Boulevard, New Buffalo, Michigan 49117 (hereinafter "Contract"), is entered into this 3rd day of September, 2025, and made by and between Kerry M. Wright as court-appointed Receiver (hereinafter "Seller") and Stephen Dykun or assigns (hereinafter "Buyer").

By signing below, the parties agree that the Contract shall be amended in accordance with the 8/29/2025 attorney review correspondence signed by Seller on 9/3/2025, copy attached, as follows:

(1) If necessary, the Closing shall be extended by mutual agreement for up to 14 days to await the closing on the Buyer's sale of the Chicago property.

(2) Possession shall be at Closing.

(3) Buyer has conducted an inspection and waives the inspection contingency. Also, despite the estate sale, all of the appliances stay, including three (3) Sub-Zero refrigerators, one (1) Sub-Zero freezer, Wolf range/stovetop, two (2) wall ovens and one (1) microwave in the pantry.

(4) The Seller shall provide an ALTA title policy with "extended" coverage for both parcels (Lot 18 and Lot 203), waiving the following standard exceptions in Title Commitment No. 111248897BTA (Revision 1) dated August 1, 2025 to the extent Chicago Title Insurance Company agrees to do so:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I-Requirements are met.

2. a. Rights or claims of parties in possession not shown by the Public Records.

    b. Any encroachment, encumbrance, violation, variation or adverse circumstance affecting the Title that would be disclosed by an accurate and complete survey of the Land.

    c. Easements or claims of easements not shown by the Public Records and existing water, mineral, oil and exploration rights.

    d. Any lien, or right to a lien, for services, labor, or material, heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

1

    e. Any and all oil, gas, mineral, mining rights and/or reservations thereof.

    f. Taxes or special assessments which are not shown as existing liens by the Public Records.

3. No liability is assumed by the Company for tax increase occasioned by retroactive revaluation or change in land usage or loss of any Principal Residence Exemption status for the Land.

4. The policy does not insure against unpaid water, sewer, electric or gas charges, if any, that have not been levied as taxes against the Land.

5. Taxes and/or assessments which become a lien or become due and payable subsequent to the effective date herein.

6. Easement(s), if any, over and across the land described in Schedule A, together with all rights appurtenant to the easement(s), as more defined and set forth in Michigan Public Act 235 of 2022, MCLA 565.104.

7. Covenants, conditions, restrictions and easements but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document recorded as Document No. Liber 1103, page 426.

8. Right(s) of Way and/or Easement(s) and rights incidental thereto as delineated or as offered for dedication, on the map of said tract/plat for purpose of public utilities.

    (5) The deed shall be a Receiver's Deed conveying the property free and clear of all rights, titles, claims, liens, and interests of the Receiver, of Plaintiff/Counter-Defendant JP Morgan Chase Bank, N.A., of Defendants/Cross-Defendants John W. Higgins and Martha R. Higgins who hold title to the property, and Defendant/Counter-Claimant/Cross-Claimant The United States of America in *JP Morgan Chase Bank, N.A. v. John W. Higgins and Martha R. Higgins, et. al.,* U.S.D.C., Western District of Michigan, Case No. 1:23-cv-1112, and any successors in interest or transferees of those parties. The personal property set forth in the Agreement shall be conveyed by a Bill of Sale.

    (6) The Seller's signature to the Purchase Agreement and all closing documents shall be signed as follows: "Kerry Wright as Receiver appointed by court order dated 4/1/2025 in U.S.D.C. Western District of Michigan Case #1-23-cv-01112."

(7)  Court approval must be obtained before Closing. If necessary, the Closing shall be extended by mutual agreement for up to 14 days to await approval of the sale by the Court.

(8)  The attorney review/modification period has been completed satisfactorily.

(9)  To the extent that there is a conflict between the Purchase Agreement and this Addendum, this Addendum shall control. In all other respects the Purchase Agreement shall remain in full force and effect.

(10)  This Addendum may be signed in counterparts and a faxed or scanned signature shall serve the same purpose as an original signature.

**SELLER**                                                                                 **BUYER**

*/s/ K Wright* as receiver appointed by court order dated 4/1/2025 in
_____          *Stephen Dykun U.S.DC. Western District of Michigan Case # 1-23-cv-01112*
Kerry Wright as Receiver appointed by          Stephen Dykun
court order dated 4/1/2025 in U.S.D.C.
Western District of Michigan
Case #1-23-cv-01112

3

(7) Court approval must be obtained before Closing. If necessary, the Closing shall be extended by mutual agreement for up to 14 days to await approval of the sale by the Court.

(8) The attorney review/modification period has been completed satisfactorily.

(9) To the extent that there is a conflict between the Purchase Agreement and this Addendum, this Addendum shall control. In all other respects the Purchase Agreement shall remain in full force and effect.

(10) This Addendum may be signed in counterparts and a faxed or scanned signature shall serve the same purpose as an original signature.

**SELLER**                                                          **BUYER**

_____                    _____
Kerry Wright as Receiver appointed by              Stephen Dykun
court order dated 4/1/2025 in U.S.D.C.
Western District of Michigan
Case #1-23-cv-01112